**TEXAS STEEL COMPANY, Appellant,**

v.

**Edward DOUGLAS, Appellee.**

No. 17683.

Court of Civil Appeals of Texas,
Fort Worth.

Jan. 23, 1976.

Rehearing Denied Feb. 20, 1976.

Mueller & Mueller, and Denning Schattman, Fort Worth, for appellant.

Laurance L. Priddy, Fort Worth, for appellee.

## OPINION

BREWSTER, Justice.

The plaintiff, Edward Douglas, sued Texas Steel Company, defendant, for damages that allegedly resulted to plaintiff, who was defendant's employee, as a result of defendant firing plaintiff for instituting a proceeding under the Texas Workmen's Compensation Law.

A jury trial was had and based on the jury verdict the trial court rendered a $2,500.00 judgment for damages in favor of plaintiff and against defendant and this appeal is made by defendant from that decree.

We affirm.

Plaintiff's position was that the cause of action sued on arose under the provisions of Art. 8307c, V.A.T.S., which provides:

"Section 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, *instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act,* or has testified or is about to testify in any such proceeding.

"Sec. 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation . . ." (Emphasis supplied.)

The jury found that (1) plaintiff was terminated by defendant because he instituted a proceeding under the Workmen's Compensation Law; (2) and (3) that the reasonable value of wages plaintiff lost to trial time as a direct result of his firing was $1,500; (4) that he will suffer a loss of earnings in the future as a result of the firing; and (5) that the reasonable value of the future loss of wages was $1,000.00.

Defendant's first point of error is that the trial court erred in overruling its motion for a directed verdict. Its second point of error is that the trial court erred in overruling its motion for judgment non obstante veredicto. It advances five different reasons why it says those two rulings are erroneous, such reasons being: (a) there is no evidence to support the submission of any issues to the jury; (b) there is no evidence to support an affirmative answer to issues 1, 2 and 4 or a finding of money damages to issues 3 and 5; (c) there is insufficient evidence to support the submission of any issue to the jury; (d) there is insufficient evidence to support an affirmative answer to issues 1, 2 and 4 or a finding of money damages to issues 3 and 5; and (e) the plaintiff failed to exercise reasonable diligence to mitigate losses.

■ The assignment in defendant's amended motion for new trial on which its first point of error is based shows that the motion for instructed verdict that defend-

ant has reference to in its first point of error was made at the close of plaintiff's case. The statement of facts shows the same thing. That motion for a directed verdict was dictated to the court reporter at the time plaintiff rested its case. When the trial court stated that he overruled the motion for a directed verdict, defense counsel then proceeded to put on the defendant's evidence. He thereafter put several witnesses on the stand before resting. When both sides rested their cases the defendant did not reurge its motion for a directed verdict. Under that set of facts the defendant waived its motion for an instructed verdict.

■ The law is well settled that a defendant by electing not to stand on its motion for an instructed verdict made after the plaintiff had introduced its evidence and rested its case, and by proceeding with the introduction of its own evidence, waives its motion for an instructed verdict. *Texas Construction Rentals, Inc. v. Harrison,* 410 S.W.2d 482 (Waco, Tex.Civ.App., 1966, ref., n. r. e.) and *Barrett v. Curtis,* 407 S.W.2d 359 (Dallas, Tex.Civ.App., 1966, no writ hist.).

For this reason alone we are required to and do overrule defendant's first point of error.

■ We are in agreement with the defendant's contention that no evidence of probative force was offered to show that the plaintiff, Douglas, filed a formal claim for compensation with the Industrial Accident Board, prior to the time the employer discharged the plaintiff in this case.

The defendant's argument under the points referred to appears to be largely based on its contention that in order for the plaintiff employee to make out a case under Art. 8307c, it was necessary for him to prove that the employee had filed a claim for Workmen's Compensation insurance with the Board, that the employer had knowledge of that fact, and that because the employee had filed such claim the employer had fired the employee. Defendant argues that because there is no evidence and insufficient evidence to establish the facts referred to that there is no evidence and insufficient evidence to support the jury's affirmative answers to issues 1, 2 and 4.

We do not agree with defendant's contention that it was necessary in this case before plaintiff could make out a case under the particular part of Art. 8307c that is involved here that plaintiff had to prove that he had filed a claim for compensation, that defendant knew about it, and that because the employee had filed such claim the employer fired him.

The plaintiff's case was pitched on the theory that the employer fired him because he had instituted a "proceeding under the Workmen's Compensation Law." That is the way the case was pleaded and that is the issue that was submitted to the jury.

The undisputed evidence in the case showed that: on March 8, 1973, the plaintiff sustained an on-the-job injury while working for defendant; that on March 12, 1973, he went to the first aid station to report his injury and to get treatment for it; he was sent to two different doctors for examination and treatment and he there received treatment of his on-the-job back injury; his employer's superintendent, Pender, received notice of his injury shortly after plaintiff went to the first aid station; and the insurance carrier thereafter paid the plaintiff two or more weeks of Workmen's Compensation insurance at the rate of $49.00 per week before plaintiff was fired on April 9, 1973. One of the checks for compensation insurance paid plaintiff by the carrier covered the week from March 23, 1973, to March 29, 1973. On about April 6, 1973, plaintiff was advised by his employer that Dr. Miller, who was then treating him, had released him to report back to work to do light duty. He talked to Mr. Pender, defendant's superintendent, and was told to report at defendant's plant for work at 6 A.M. on April 9, 1973. Plaintiff testified that on that date he did not report

for work until around 9 A.M. because he had been hurting and could not sleep so he had taken sleeping pills and overslept that morning. When he arrived at work, he reported to Mr. Pender, and was told that he was fired for not reporting to work when he was supposed to.

One question for our decision here is whether or not at the time defendant fired the plaintiff on April 9, 1973, the plaintiff had instituted a proceeding under the Workmen's Compensation Law.

Article 8307, § 4a, provides that one step, after receipt of an injury, that an employee must take in order to maintain a proceeding for compensation is to give notice of the injury to the subscriber within 30 days after the injury, and another step is to make a claim for compensation with respect to the injury within six months after it happened.

Article 8307, § 7, V.A.T.S., requires employers, within eight days after an employee sustains an injury causing absence from work of more than one day, to file a report thereof with the Industrial Accident Board.

Article 8307, § 7a, V.A.T.S., provides that if such report is not filed as required by § 7 that the employees' six months time for filing his claim for compensation does not begin to run until the report required by § 7 is filed.

In this case the employee had an on-the-job injury, he reported it to his employer, the carrier furnished him medical treatment as it was required by the Act to do, and it had paid him Workmen's Compensation insurance for several weeks for the disability produced by the injury. This all occurred before the employee was fired on April 9, 1973.

The steps that had been taken by the parties set the wheels of the Workmen's Compensation Law into motion and at the time the employee was fired he had been furnished the medical treatment and the Workmen's Compensation benefits that the Workmen's Compensation Law provided for.

". . . each step in the progress of the maturity of a claim under the Workmen's Compensation Act, . . . from the time of the injury to its final adjudication is a mandatory requirement, necessary to the exercise of jurisdiction by the first and succeeding statutory agencies." *American Surety Co. of New York v. Mays*, 157 S.W.2d 444 (Waco, Tex.Civ.App., 1941, ref. want merit), and see *Duncan v. Fidelity & Casualty Company of N. Y.*, 371 F.2d 646 (Fifth Circuit, 1967).

The references to Art. 8307, Sections 4a, 7 and 7a, mentioned above, make it apparent that it would be possible for an injured employee to draw full compensation benefits, even for total and permanent disability caused by an on-the-job injury, without ever filing the claim for compensation referred to in Art. 8307, § 4a. This being true it would be inconceivable to conclude that under those facts no proceeding under the Workmen's Compensation Law was ever had even though the employee had collected all benefits the law provided for, just because the formal claim for compensation was never filed.

The Legislature's purpose in enacting Art. 8307c, V.A.T.S., was to protect persons who are entitled to benefits under the Workmen's Compensation Law and to prevent them from being discharged by reason of taking steps to collect such benefits.

If the Legislature's intention was that the cause of action it created by Art. 8307c, V.A.T.S., should in all instances only arise in cases where the employee was fired after he had filed the claim for compensation provided for in Art. 8307, § 4a, then the law would be completely useless and would not accomplish the purpose for which it was enacted. This is true because all the employer would have to do in order to avoid the consequences of the statute would be to fire the injured workman before he filed the claim.

Black's Law Dictionary, Revised 4th Edition, gives as one definition of a "proceeding" the following: ". . . a prescribed

mode of action for carrying into effect a legal right."

In the case of *W. S. Tyler Co. v. Rebic*, 118 Ohio St. 522, 161 N.E. 790 (1928) the court held that, "A proceeding in the enforcement of a civil right is an act necessary to be done in order to attain a given end. It is a prescribed mode of action for carrying into effect a legal right."

In that case the court held that an oral application for compensation that was refused by the employer constituted the commencement of a proceeding.

The Random House Dictionary of the English Language (College Edition, 1968) defines "proceeding" as "a particular action or course of action . . . a legal step or measure."

The court in the case of *Braden v. Transport Insurance Co.*, 307 S.W.2d 655 (Dallas, Tex.Civ.App., 1957, no writ hist.) said the following: "It is well established that the provisions of our Workmen's Compensation Statute with respect to the successive steps in the progress and maturity of a claim, are mandatory, and the provisions of the statute must be complied with or an action is not maintainable in the courts."

We hold that under the undisputed facts of this case prior to the time the defendant fired the plaintiff on April 9, 1973, the plaintiff had instituted a proceeding under the Workmen's Compensation Law within the meaning of Article 8307c, V.A.T.S., and that the defendant's superintendent, Pender, was aware of that fact when he fired plaintiff.

Another case that supports our holding that a proceeding had been instituted within the meaning of the applicable statute is *Green v. Board of Com'rs*, 126 Okl. 300, 259 P. 635 (1927).

The following is from 53 Tex.Jur.2d 229, Statutes, § 159: "A cardinal rule of construction requires that all the language and every part of a statute shall be given effect, if reasonably possible. In other words, effect and meaning should be given to each and every sentence, clause, phrase, and word of the act, . . . a construction should not be adopted, if it can be avoided, that will render any part of the act inoperative, nugatory, or superfluous. Every word . . . is presumed to have been used for a purpose, and should be given some effect other than that which would result from its omission." And in § 160 thereof is: "Another . . . rule requires that a statute be construed as a whole . . . .."

Those settled rules of statutory construction must be applied in construing the meaning of Article 8307c.

Under the appellant's contention advanced in this case there could be no "proceeding under the Workmen's Compensation Act" unless the employee had prior thereto filed a claim for compensation with the Industrial Accident Board. Appellant's argument appears to be that the filing of the claim for compensation is the start of the "proceeding" that is referred to in Art. 8307c.

If that contention is correct then the Legislature's act in inserting into the statute the words "instituted, or caused to be instituted . . . any proceeding under the Texas Workmen's Compensation Act" would have been nugatory and superfluous because that situation would have been covered, even if those words had been left out of the statute completely, by the part of the statute that creates a cause of action against an employer for firing an employee because he filed a claim.

In order to give the words "instituted, or caused to be instituted . . . any proceeding under the Texas Workmen's Compensation Act" some effect other than would result from their omission, we must construe this part of the statute to include a state of proceeding under the Workmen's Compensation Act reached prior to the time the employee files his claim for compensation.

This is another reason why we hold that a "proceeding" had already been instituted under the Workmen's Compensation Law

by the plaintiff at the time the defendant fired him.

■ We also hold that the evidence was sufficient to raise a fact issue on the question of whether the defendant fired the plaintiff because he had instituted a proceeding under the Workmen's Compensation Act. The evidence showed that defendant's superintendent, Pender, after learning that plaintiff had reported an injury, went out of his way to get the doctor that was then treating plaintiff to release him for light duty work at a time when the doctor advised that his condition was such that he should not be required to lift more than five to eight pound objects or to bend more than one time each hour while performing such light duty work. Pender required him to report to work at 6:00 A. M. on April 9, 1973, in that state of health and when he reported late that morning Pender immediately fired him, although the plaintiff testified that he had had to take sleeping tablets to get to sleep because of his pain that night, and that this caused him to oversleep and that he had advised Pender of those facts at the time he fired him. Plaintiff had been late to work on prior occasions and had not been fired because of it.

■ Defendant next argues that there was no evidence and insufficient evidence to support the jury's answers to issues Nos. 2 through 5, inclusive. The evidence showed that the defendant employer paid the same amount of wages for light duty work as they paid for doing the work that plaintiff was doing when injured. The light duty job he had when he was fired paid plaintiff $2.70 an hour. The most he has been able to earn since is $2.40 an hour. He testified that when he was fired he could lift very little and could bend very little and that because of his physical condition there were very few jobs he could handle. He applied for jobs doing light work, but could not get any and it was October, 1973, before he was able to get a job. We hold that there was evidence and sufficient evidence to support the jury's answers to issues Nos. 2, 3, 4 and 5. A Court of Civil Appeals in affirming a case in which sufficiency of the evidence points are involved is not required to set out the evidence pro and con on the issues, and we will not do so more than we have above. *Hammond v. Stricklen*, 498 S.W.2d 356 (Tyler, Tex.Civ.App., 1973, ref., n.r.e.).

■ Whether or not plaintiff used reasonable diligence to mitigate damages was a fact issue for the jury under the facts of this case. The matter was submitted to the jury by an instruction given under issue No. 5 with no one objecting. See 17 Tex.Jur.2d 401, Damages, § 326.

■ The defendant makes a short argument under his first two general points of error to the effect that the trial court did not apply a correct measure of damages in rendering judgment. He makes that contention for the first time on appeal. Appellant has no point of error in his brief making such a contention.

It is also noted that the defendant made no objections whatever to the court's charge, urging that an improper measure of damages was inquired about therein. There is no assignment urged in defendant's amended motion for new trial contending that the trial court applied an improper measure of damages in rendering judgment. (Rule 324, T.R.C.P.) No motion for instructed verdict was urged and no motion for a judgment non obstante veredicto was urged wherein the contention was advanced by defendant that plaintiff had not proved up a proper measure of damages or that the trial court applied an erroneous measure of damages in rendering the judgment. With the record in that state the matter was waived.

Defendant's third point of error is that the trial court erred in overruling its exceptions to plaintiff's Second Amended Original Petition.

■ There is no showing in the record before us that the trial court made the ruling that is complained of in this point of error. The record contains no order overruling the exceptions referred to. With the

**118**

record in this state appellant did not properly preserve the matter for appellate review. Special exceptions to pleadings that are not called to the attention of the trial court and on which the record does not show that the trial court acted are waived. *Pure Oil Company v. Fowler*, 302 S.W.2d 461 (Dallas, Tex.Civ.App., 1957, ref., n.r.e.); *Cook v. Jaynes*, 366 S.W.2d 646 (Dallas, Tex.Civ.App., 1963, no writ hist.); and *Rothchild v. Fannin Bank*, 407 S.W.2d 878 (Texarkana, Tex.Civ.App., 1966, ref., n.r.e.).

All of appellant's points of error are overruled.

■ The plaintiff has filed herein two cross-points of error wherein he contends that the trial court erred in excluding certain evidence. We overrule both points. They have become immaterial in view of the fact that we are affirming the trial court's judgment in favor of the plaintiff. Regardless of how we rule on the points such rulings could not be of aid to plaintiff in this case, because he has already won it regardless of how we ruled on those cross-points.

The judgment is affirmed.