173 N.J. Super. 162 (1980)
413 A.2d 960
JO ANN LALLY, APPELLANT,
v.
COPYGRAPHICS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1980.
Decided March 13, 1980.
*165 Before Judges LORA, ANTELL and PRESSLER.
Charles J. Farley, Jr., argued the cause for the appellant (Farley & Farley, attorneys).
Edward A. Dreskin argued the cause for the respondent (Leon Dreskin, attorney).
Michael S. Bokar, Deputy Attorney General, argued the cause for the Department of Labor and Industry (John J. Degnan, Attorney General of New Jersey, attorney; Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by PRESSLER, J.A.D.
This appeal raises novel and significant questions as to the nature of the remedies available to an employee who has been discharged or otherwise discriminated against by his employer in retaliation for his pursuit of workers' compensation benefits. More particularly, we are here called upon to interpret N.J.S.A. 34:15-39.1 et seq., which speaks to employer retaliation and to determine the remedial scope of that legislation, the manner in which it was intended to be implemented, and whether or not a judicially cognizable cause of action for compensatory and punitive damages based upon such retaliation is created by or exists independently of that enactment.
The problems with which we are now confronted have reached us by way of a circuitous and markedly unproductive procedural route which is symptomatic of the substantive and procedural *166 uncertainties engendered by the less than definitive manner in which the legislation has been drafted. Accordingly, these problems are most readily appreciated against the backdrop of the statutory enactment. Adopted in 1966 and heretofore unconstrued, the legislative scheme provides as follows:
34:15-39.1 Unlawful discharge of, or discrimination against, employee claiming compensation benefits; penalty
It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer, or because he has testified, or is about to testify, in any proceeding under the chapter to which this act is a supplement. For any violation of this act, the employer or agent shall be punished by a fine of not less than $100.00 nor more than $1,000.00 or imprisonment for not more than 60 days or both. Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination; provided, if such employee shall cease to be qualified to perform the duties of his employment he shall not be entitled to such restoration and compensation.
34:15-39.2 Additional penalty; summary recovery
As an alternative to any other sanctions herein or otherwise provided by law, the Commissioner of Labor and Industry may impose a penalty not exceeding $1,000.00 for any violation of this act. He may proceed in a summary manner for the recovery of such penalty, for the use of the State in any court of competent jurisdiction.
34:15-39.3 Liability of employer for penalty
The employer alone and not his insurance carrier shall be liable for any penalty under this act.
Plaintiff Jo Ann Lally was, in 1975, an employee of defendant Copygraphics, a division of United States Printing Ink Corporation. She alleges that in March of that year she sustained minor injuries of her right eye and left foot in a work-connected accident. It is her further allegation that when she presented to her employer her bills for her medical treatment, she was advised that if she persisted in making "this kind of trouble" by attempting to obtain workers' compensation benefits, she would *167 be discharged. She persisted, she claims, and she was discharged. She accordingly brought an action against Copygraphics in the Superior Court, Law Division, by way of a complaint expressly relying upon N.J.S.A. 34:15-39.1 and seeking both compensatory and punitive damages.
Shortly before the scheduled trial of the action defendant moved for dismissal of the complaint on the ground that it failed to state a claim upon which relief could be granted. R. 4:6-2(e). The trial judge, in considering the motion, noted that the New Jersey Administrative Code sets forth a procedure for the processing of discrimination complaints, providing for the filing, in prescribed form, of a complaint pursuant N.J.S.A. 34:15-39.1 with the Director of the Division of Workers' Compensation, N.J.A.C. 12:235-11.1 to 11.3; an investigation thereof by the Division, N.J.A.C. 12:235-11.4, and an authorization to the Commissioner of the Department of Labor and Industry, upon receipt of the complaint and investigation results, to "take such action pursuant to N.J.S.A. 34:15-39.1, and so forth, as he deems necessary," N.J.A.C. 12:235-11.5.
Relying on these Code provisions, the trial judge concluded that N.J.S.A. 34:15-39.1 et seq. and its implementing rules were both substantively and procedurally preemptive and that exclusive jurisdiction to deal with plaintiff's grievance accordingly resided in the Director of the Division of Workers' Compensation, Department of Labor and Industry. He accordingly transferred plaintiff's claim to the Director "for appropriate action under the administrative code" and expressly limited her right to damages to those prescribed by N.J.S.A. 34:15-39.1.[1] Plaintiff's *168 motion for leave to appeal the transfer order was denied by this court[2] and plaintiff submitted her complaint to the Division of Workers' Compensation.
Some months following her submission plaintiff received a letter over the signature of the designee of the Commissioner of Labor and Industry, purporting in this cryptic fashion, to dispose of her complaint:
I have considered your complaint and the report of the representative who was assigned by the Division of Workers' Compensation to investigate the matter, and I have decided not to impose the alternative penalty permitted under N.J.S. 34:15-39.2.
My decision relates only to the discrimination complaint filed by you with this Department; and not to any other proceeding that you may deem appropriate under N.J.S. 34:15-39.1 et seq., or to the merits of any petition filed or to be filed for workers' compensation.
Confronted with the anomaly of the court regarding the agency as exclusively empowered to grant compensatory relief and the agency regarding the court as exclusively empowered to do so, plaintiff's attorney sought further clarification from the Commissioner. The response of his designee left no doubt that under his construction of the statute, compensatory relief could, despite the remedial tenor and jurisdictional implications of the afore-cited regulations, come only from a court. His letter of clarification offered this explanation:
N.J.S. 34:15-39.2 permits the Commissioner of Labor and Industry to impose an "alternative" sanction of a penalty not in excess of $1,000, but such alternative remedy does not empower the Commissioner to restore a worker to a job or give the worker back pay resulting from any discrimination if the Commissioner *169 determines that an employee has been discriminated against by an employer for participating in a Workers' Compensation proceeding. Please note that if the Commissioner imposes the penalty permitted by N.J.S. 34:15-39.2, there are no back pay or job restoration rights available for the worker under N.J.S. 34:15-39.1, containing sanctions of fines, imprisonment, back pay, job restoration, etc., that can only be imposed by a Court.
* * * * * * * *
Accordingly, I decided for the Commissioner not to consider Mrs. Lally's complaint under the "alternative" sanction provision of N.J.S.A. 34:15-39.2 and to leave you and your client, Jo Ann Lally, free to resolve her individual rights under N.J.S.A. 34:15-39.1. This letter relates solely to the discrimination complaint filed by Mrs. Lally and not to any other proceedings that you or she may deem appropriate or to the merits of any petition filed or to be filed on her behalf under the Workers' Compensation Law.
Having been left without the recourse of pursuing a remedy by the jurisdictional deference of the court and the agency to each other, plaintiff appealed both from the court's order of transfer and from the Commissioner's refusal to proceed with the merits of her complaint. We have concluded, for the reasons hereafter set forth, that the most rational solution to this impasse consistent with apparent legislative intent and the public policy sought to be advanced by the anti-retaliatory statute is to hold that an employee has a judicially cognizable cause of action for compensatory and punitive damages against his employer for retaliatory discrimination and that such action is not preempted by any primary or exclusive agency jurisdiction or by any other provision of the statutory complex.
Articulation of our reasons for so concluding requires a brief foray into historical overview. The evil to which N.J.S.A. 34:15-39.1 et seq. is addressed surfaced, at least as a matter of judicial attention, relatively late in the development of the law of workers' compensation, and the proliferation of decisional law dealing with the remedial consequences of retaliatory discrimination is a phenomenon of the last decade only. Although the *170 courts of other jurisdictions which have considered the issue have expressed diverse views for divergent reasons on the question of the availability of a civilly prosecuted compensatory remedy for an employee who has been the victim of retaliatory discrimination, all are agreed as to the opprobriousness of such retaliatory conduct, its grave potential for undermining the remedial purposes and functioning of the workers' compensation scheme and hence its consequent oppugnance to public policy of longstanding legislative solicitude and overriding public concern. Thus, in apparently the earliest of the reported cases dealing with a claimed judicial remedy for a retaliatory discharge, the South Carolina Supreme Court characterized the employer's action as "reprehensible" even though it felt constrained to deny compensatory relief on the ground that without authorizing legislation, the court was not free to interfere with an at-will employment relationship. Raley v. Darling Shop of Greenville, Inc., 216 S.C. 536, 59 S.E..2d 149 (1950). And in Christy v. Petrus, 365 Mo. 1187, 295 S.W..2d 122 (1956), the Missouri Supreme Court reached a similar conclusion, holding that a statute making employee's retaliatory conduct criminal did not create a right of civil action for compensatory damages in the employee victim. See, also Dockery v. Lampart Table Co., 36 N.C. App. 293, 244 S.E.2d 272 (Ct.App. 1978), cert. den. 295 N.C. 465, 246 S.E.2d 215 (Sup.Ct. 1978).
The first of the reported cases finding an employee's right of action is the Indiana decision in Frampton v. Central Indiana Gas Co., 260 Ind. 249, 297 N.E.2d 425 (Sup.Ct. 1973). In that jurisdiction, like South Carolina and unlike Missouri, the state legislature had not addressed retaliatory discrimination in any way  either civilly, criminally or administratively. The court predicated its recognition of a cause of action on considerations of public policy, noting first that the workers' compensation law
... creates a duty in the employer to compensate employees for work-related injuries (through insurance) and a right in the employee to receive such *171 compensation. But in order for the goals of the Act to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right. Employees will not file claims for justly deserved compensation  opting, instead, to continue their employment without incident. The end result, of course, is that the employer is effectively relieved of his obligation. [297 N.E.2d at 427]
It then reasoned that since retaliatory discharge is "a wrongful, unconscionable act," which "should be actionable in a court of law," a discharge so motivated and in contravention of an employee's exercise of a statutorily created right must be regarded as an exception to the general rule permitting at-will discharge of an employee unprotected by contract or tenure job rights.
Just as Frampton responded to the "no-statute" rationale underlying the legal and factual complex in Raley, so did the Illinois Supreme Court respond to the preemptive criminal statute rationale of Christy. In Kelsay v. Motorola, Inc., 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978), the court rejected the argument that the legislatively-created criminal sanctions for retaliatory conduct evinced a legislative intent that such sanctions be exhaustive of the employer's answerability for such conduct to the exclusion of a private remedy available to the employer in a civil action. To the contrary, the court reasoned persuasively from the premise that "retaliatory discharge is offensive to the public policy of this State as stated in the Workmen's Compensation Act," and concluded that
This policy can only be effectively implemented and enforced by allowing a civil remedy for damages, distinct from any criminal sanctions which may be imposed on employers for violating the Act after 1975. The imposition of a small fine, enuring to the benefit of the State, does nothing to alleviate the plight of those employees who are threatened with retaliation and forgo their rights, or those *172 who lose their jobs when they proceed to file claims under the Act. It is conceivable, moreover, that some employers would risk the threat of criminal sanction in order to escape their responsibility under the Act. Further, the fact that an act is penal in nature does not bar a civil remedy, and where a statute is enacted for the benefit of a particular class of individuals a violation of its terms may result in civil as well as criminal liability, even though the former remedy is not specifically mentioned. [23 Ill.Dec. at 564-565, 384 N.E.2d at 358-359]
Jurisdictions thereafter recognizing the employee's civil cause of action for compensatory and punitive damages for retaliatory conduct have done so in the absence of any legislative expression at all by generally adopting the Frampton rationale and, where a criminal or quasi-criminal statute has rendered the conduct unlawful and subject to penal sanction, by generally adopting the Kelsay rationale. See Sventko v. Kroger Co., 69 Mich. App. 644, 245 N.W.2d 151 (Ct.App. 1976); Brown v. Transcon Lines, 284 Or. 597, 588 P.2d 1087 (Sup.Ct. 1978); Texas Steel Co. v. Douglas, 533 S.W.2d 111 (Tex.Civ.App. 1976). See, also, Annotation, "Workmen's Compensation: Recovery for Discharge in Retaliation for Filing Claim," 63 A.L.R.3d 979 (1975), and later case service. And see Blumrosen, "The Right to Seek Workmen's Compensation," 15 Rutg.L.Rev. 491 (1961).
Were the legislative situation in New Jersey similar to that in either Frampton or Kelsay, our task would be a relatively simple one, and the road to solution, if not well-trod, then at least marked with helpful signposts. Were there no legislation at all, we would be encouraged to follow Frampton not only by our general approval of its rationale but also by our recent recognition in another context that the at-will employment rule must yield to countervailing "clear and well-defined public policy and substantial violations thereof." Pierce v. Ortho Pharmaceutical Corporation, 166 N.J. Super. 335, 342 (App.Div. 1979), certif. granted 81 N.J. 266 (1979). And if we had a statute providing only for criminal or quasi-criminal sanctions, our determination *173 to follow Kelsay would be fortified by our earlier recognition of the creative vitality of proposed § 874A of Restatement, Torts 2d (Tentative Draft No. 23, April 1977), which provides that
When a legislative provision proscribes or requires certain conduct for the benefit of a class of persons but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.
See, applying this section of the Restatement draft, Bortz v. Rammel, 151 N.J. Super. 312 (App.Div. 1977), certif. den. 75 N.J. 539 (1977).[3]
The impediment to our simply opting to follow the Frampton-Kelsay line of authority is the singular provision of the New Jersey statutory complex purporting to create and prescribe a compensatory remedy for the employee-victim. Analysis, however, of the effect of that provision on the employee's potential tort or tort-like remedy requires, preliminarily, careful parsing of this legislation, particularly in light of the various opposing contentions before us as to what it means in each of its parts and in the sum of its parts.
The first sentence of N.J.S.A. 34:15-39.1 constitutes a legislative declaration that retaliatory discrimination by an employer against an employee who seeks to obtain workers' compensation benefits is unlawful. The second sentence of that *174 section subjects an employer found guilty of such unlawful conduct to a fine not to exceed $1,000, or imprisonment for not more than 60 days, or both. While this portion of the statute is silent as to the forum in which such violations are to be prosecuted, it is nevertheless clear that both the forum and the nature of the proceedings are necessarily circumscribed and self-defined by the prescribed penalty. Since that penalty is classically appropriate to the category of petty offenses,[4] and since there is patently no jurisdiction in an administrative agency to impose that kind of quasi-criminal sanction, we are satisfied that the only realistic construction of the first two sentences of N.J.S.A. 34:15-39.1 is the conclusion that they create the disorderly persons offense of retaliatory discrimination subject to prosecution in the name of the State on sworn complaint in a court of limited criminal jurisdiction.[5]
N.J.S.A. 34:15-39.2, standing alone, also presents no constructional problem. It is the familiar device of the imposition by an administrative agency of a civil penalty enforceable by summary proceeding in the Superior Court. See N.J.S.A. 2A:58-1 et seq.; R. 4:70-1. And see, generally, Sawran v. Lennon, 19 N.J. 606 (1955); Dept. of Cons. and Eco. Dev. v. Scipio, 88 N.J. Super. 315 (App.Div. 1965), certif. den. 45 N.J. 598 *175 (1965). Of note is that the civil penalty power authorized by this section is reposed directly in the Commissioner of Labor and Industry.
Thus far we have before us the entirely unexceptionable scheme of the creation of a disorderly persons offense by N.J.S.A. 34:15-39.1 and the complementary alternative provision of N.J.S.A. 34:15-39.2 for an administratively-imposed civil penalty. The question then, is to determine how and where in this scheme the private compensatory remedy provided for by the concluding sentence of the disorderly persons section fits. This is the sentence which, as we have noted, stipulates that
Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination; provided, if such employee shall cease to be qualified to perform the duties of his employment he shall not be entitled to such restoration and compensation.
The Attorney General takes the position that placement of this provision in the disorderly persons section of the statute evinces a legislative intent that this private remedy of a patently civil nature be imposed as part of the judgment of conviction entered by a court of limited jurisdiction. He supports this construction by pointing out the provision of the New Jersey Code of Criminal Justice, N.J.S.A. 2C:43-3(e), which authorizes inclusion in the judgment of conviction of a requirement of monetary restitution by the defendant to the victim of his crime. While it is true that that section of the Code provides for a broad range of restitutionary relief for the victim of crime, we are nevertheless persuaded that it is wholly inapposite and inapplicable here. First, enactment of the compensatory provisions of N.J.S.A. 34:15-39.1 long predated the Code. Prior to the Code's adoption it was clear that while a requirement that the defendant make restitution to the victim was a permissible special condition of probation, it was not an independently *176 permissible sentencing element. See N.J.S.A. 2A:168-2, repealed by N.J.S.A. 2C:98-2. And see State v. Harris, 70 N.J. 586 (1976); State v. Wright, 156 N.J. Super. 559 (App.Div. 1978); State v. Blassingale, 163 N.J. Super. 110 (App.Div. 1978), certif. granted, 79 N.J. 464 (1978), dismissed 81 N.J. 48. It is furthermore clear that an ordered reinstatement to employment is beyond even the broad restitutionary authorization of the Code. Finally, we are satisfied that the restitutionary tenor of the Code does not and was not intended to encompass the compensatory relief contemplated by N.J.S.A. 34:15-39.1 even if such relief were arguably not an extrajurisdictional sanction vis-a-vis a judgment of conviction of crime or quasi-crime. We must reject, therefore, the suggestion of the State that the compensatory remedy is in any way involved in the disorderly persons proceeding.
Having discarded that alternative reading of the statute, we are left with two possibilities  either that the Legislature by this provision intended to create a quasi-judicial administrative proceeding in which the employee might seek compensatory relief or that it intended to announce the availability to the employee of a judicially cognizable tort or tort-like action limited, in respect of scope of relief, to recovery of loss of wages and reinstatement. We have concluded from the available indicia of statutory construction and general administrative law principles that the creation of an administrative proceeding is more likely consonant with legislative intent.
As a constructional matter, we note that the second section of the statute, N.J.S.A. 34:15-39.2, expressly authorizes the Commissioner of Labor and Industry to impose a civil penalty in addition to other measures against the employer provided for by the act. That provision is clearly susceptible to the reading that such civil penalty is imposable in addition to such other measures which he, the Commissioner, may take under the act. Since obviously he cannot conduct a disorderly *177 person proceeding, the only other measure available to him would be the adjudication of claims for the stipulated compensatory relief. It is, of course, clear that the Commissioner has available to him the quasi-judicial machinery in his Department to conduct such proceedings. Indeed, his original responses to plaintiff here were made by his hearing officer assigned to the Department's Office of Hearings, Appeals and Review.[6] Furthermore, the expertise of the Commissioner in respect of retaliatory discrimination prohibited by the act and his interest in enforcing the policy of the act are matters which the Legislature has recognized in according him the civil penalty power. We see no reason why that recognition and the underlying reasons therefor should not have been intended to extend as well to an administrative proceeding designed to provide a complementary private remedy. See, generally, City of Hackensack v. Winner, 82 N.J. 1 (1980). Moreover, adoption of administrative regulations fleshing out the legislative declaration with details and specifics of an administrative procedure for processing private complaints with the ultimate determination made by the Commissioner is not only consistent with but is also supportive of our conclusion that such administrative proceedings were legislatively intended.
The Commissioner apparently declined to exercise quasi-judicial jurisdiction here for the reason, as explained in his clarifying letter to plaintiff heretofore adverted to, that in an unreported opinion the Chancery Division of the Superior Court had held that he had neither the power of reinstatement nor of awarding back pay. We do not, however, perceive any legal basis for such a conclusion. Back pay awards and reinstatement are both remedies which are traditionally within the enforcement power of administrative agencies charged with supervision and regulation of various aspects of the employment relationship *178 and are remedies routinely afforded by, for example, the Public Employment Relations Commission, the Director of the Division on Civil Rights, the Commissioner of Education and the Civil Service Commission. See, e.g., respectively, Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n, 78 N.J. 25 (1978); Castellano v. Linden Bd. of Ed., 158 N.J. Super. 350 (App.Div. 1978), mod. 79 N.J. 407 (1979); Winston v. Bd. of Ed. of So. Plainfield, 64 N.J. 582 (1974); West New York v. Bock, 38 N.J. 500 (1962). There is no sound reason why the granting of such relief, particularly in view of the express statutory authorization, should be beyond the power of the Commissioner of Labor and Industry.[7] We are, moreover, persuaded that the Legislature's limitation of the available private remedy to such relief as is traditionally affordable by administrative agencies further bespeaks its intention to have created an administrative quasi-judicial implementing procedure.
For the reasons herein stated we conclude that the effect of the retaliatory discrimination act is to provide three separate alternative and nonexclusive routes where such claims of discrimination are made. A complaint may be filed and proceeded with in a court of limited criminal jurisdiction charging the violating employee with a disorderly persons offense. An administrative penalty proceeding may be initiated by the Commissioner of Labor and Industry. And an employee may file a complaint for compensatory relief with the Commissioner to be proceeded with in quasi-judicial fashion.
Having found the availability to an employee of an administrative remedy, we address the final question before us, and that is whether the availability of such a remedy excludes a right of judicial action for both compensatory and punitive *179 damages. Our answer to this is in the negative. First, for the reasons we have already stated, we are satisfied that absent the compensatory provision of the statute, the cause of action would clearly exist. To hold that the administratively available compensatory remedy constitutes a complete substitution therefor would require, in our view, the conclusion that the Legislature so intended. We cannot so conclude. First, the statute itself does not explicitly express such an intent.[8] Furthermore, we decline to extrapolate such an implied intent from the Legislature's limitation of the private remedy to loss of wages and reinstatement for the reason that that provision defines only the scope of the administratively available relief which, virtually by definition, would exclude an award of punitive damages in the common-law sense. Thus, in our view, this provision of the statute does not directly address a coexistent judicial right of action. The question as to whether the Legislature implicitly intended that it coexist is inextricably bound to the question of adequacy of the administrative remedy since we do not believe that the Legislature intended to replace judicial recourse with an administrative proceeding which would not sufficiently protect both the public and the private interests in enforcement of the policy against retaliatory discrimination.
We have concluded, moreover, that the administrative remedy is not necessarily adequate and therefore that the judicial remedy must be deemed to coexist, with the consequence that the employee has the option of proceeding either judicially or administratively. First, we regard the policy of the retaliatory discrimination act as one so firmly grounded in the public interest as to require assiduous protection and enforcement. *180 Employer conduct which undermines employee resort to workers' compensation benefits has been characterized by the leading commentator as a matter of "opprobrium" and as employer misconduct which is "particularly repellent." 2A Larson, Workmen's Compensation Law (Sept. 1979 Supp.), § 68.36 at 13-40, 13-42. We agree and consequently conclude, as we have indicated, that such conduct by an employer constitutes both a public and a private wrong, each of which is entitled to vindication. Compare Jackson v. Concord Company, 54 N.J. 113, 123 (1969), so holding in respect of the Law Against Discrimination, N.J.S.A. 10:5-1 et seq. In this posture we are satisfied that a remedy limited to reinstatement and loss of wages inadequately serves the statutory policy. As cogently observed by the California District Court of Appeal in Raden v. City of Azusa, 97 Cal. App.3d 336, 158 Cal. Rptr. 689 (1979), there may well be situations in which a wrongfully discharged employee is not interested in reinstatement or has succeeded in finding other employment expeditiously. The compensatory damages in such case will be minimal and hence, even if augmented, from the employee's point of view, by the statutory fine and penalty, may be of insufficient financial moment to act as the deterrent necessary to promote the public policy. Thus, the court in Raden concluded, "the maintenance of a civil suit for damages, with the attendant possibility of punitive damages in appropriate cases, may prove the only effective deterrent against retaliatory discharge by employers." Id. 158 Cal. Rptr. at 695, fn. 6.[9]
*181 There are practical considerations for permitting the judicial cause of action as well. Vindication of both the public and the private interest in the single proceeding implied by the tort action is likely to avoid the circuitry implicit in the three separate proceedings envisioned by the statute and hence is not only more economical for the parties and the judicial and administrative process but is also more likely to produce an appropriate overall result. We have been, moreover, advised by the Attorney General at oral argument that although some 10 or 15 retaliatory discrimination complaints are filed annually with the Commissioner, he has thus far declined to exercise his discretionary penalty power pursuant to N.J.S.A. 34:15-39.2, opting instead to leave the complainants to their private remedy which he regards as judicial in nature. The availability of punitive damages in such a judicial proceeding may well compensate for the Commissioner's practice heretofore in this regard and may well obviate any prospective need he might perceive to institute a penalty proceeding. We would also assume that the courts of limited criminal jurisdiction will be able to husband their resources in respect of such complaints if a full compensatory and punitive remedy were otherwise available. And, finally, we perceive no inherent bar to concurrent court and agency jurisdiction which would preclude the cause of action here. See Gray v. Serruto Builders, Inc., 110 N.J. Super. 297 (Ch.Div. 1970).[10] And cf. City of Hackensack v. Winner, supra. And cf. Texas Steel Co. v. Douglas, supra.
In summary, it is our holding that an employee who claims to have been the victim of retaliatory discrimination, in *182 violation of N.J.S.A. 34:15-39.1 et seq., may elect to pursue either a judicial or administrative remedy as herein defined. Plaintiff here elected to pursue a judicial remedy and should have been permitted to do so. Since that was her election and is still her preference, the complaint should not have been transferred by the Law Division.[11] The appeal, therefore, from the actions taken by the Commissioner of Labor and Industry following the transfer is moot.
The order of the Law Division transferring the complaint to the Commissioner of Labor and Industry is reversed and the matter remanded for further proceedings on the merits. The appeal from the action of the Commissioner of Labor and Industry is dismissed as moot.
ANTELL, J.A.D. (dissenting).
The import of N.J.S.A. 34:15-39.1 is threefold: it (1) declares it unlawful for any employer to discharge "or in any other manner discriminate against" an employee for seeking workers' compensation benefits or for testifying in a workers' compensation proceeding; (2) subjects an offending employer to a $1,000 fine and 60 days imprisonment; (3) mandates restoration of the aggrieved employee to his employment and compensation for lost wages. Supplementing this section, § 39.2 provides that as an alternative to any other sanctions the Commissioner of Labor may recover a penalty of up to $1,000 for any violation by way of a summary action "in any court of competent jurisdiction."
My colleagues hold that in addition to the foregoing remedies and sanctions an aggrieved employee may also pursue the further remedy of a common-law action for compensatory damages over and above lost wages and for punitive damages. They also conclude that the remedies of job restoration and compensation *183 for lost wages are obtainable by the employee through an administrative proceeding in the Department of Labor. With these two conclusions I respectfully disagree.
At common law an employer was free to discharge an employee with or without cause in the absence of an agreement to the contrary. English v. College of Medicine & Dentistry of N.J., 73 N.J. 20, 23 (1977). Exceptions to this rule have been recognized where sound public policy required, and there is no doubt as to the socially valid policy underlying the statute before us in securing the right of injured workers to seek compensation without fear of reprisal. Beneficent though the legislation may be, however, it is by no means free of troubling consequences. It encompasses, for example, the action of an employer who refuses to continue in his employ an employee whom he honestly believes has filed a fraudulent claim, or one whose frequent accidents and claims result in unreasonable costs to the employer and absenteeism which impairs the operation of the employer's business. Nor are we concerned only with large industrial employers. The remedy of job restoration is also made applicable to small-scale employments, entailing close relations even though in equity a court will not compel the continuation of an obnoxious personal relationship. See Sarokhan v. Fair Lawn Memorial Hospital, 83 N.J. Super. 127, 133 (App.Div. 1964); 42 Am.Jur.2d, Injunctions, §§ 101, 102. Indeed, the family-run neighborhood shop, the single professional person who hires a secretary, and the homemaker who engages a single domestic worker once a week are also employers within the meaning of the statute. Furthermore, discrimination cases, whether against large or small employers, are difficult to defend, and once an employee claims compensation or testifies in a compensation proceeding he thereby acquires privileged status so that the employer may discharge, "or in any other manner" discriminate against, him (such as by changing his job assignment) only at peril of facing all the sanctions and remedies of the statute. As *184 Judge Underwood wrote in his dissenting opinion in Kelsay v. Motorola, Inc., 74 Ill.2d 172, 23 Ill.Dec. 559, 568, 384 N.E.2d 353, 362 (Sup.Ct. 1978), given these circumstances:
... no matter how indolent, insubordinate or obnoxious an employee may be, if he has filed a compensation claim against an employer, that employer may thereafter discharge him only at the risk of being compelled to defend the suit for retaliatory discharge and unlimited punitive damages, which could well severely impair or destroy the solvency of small businesses.
The foregoing comments are not offered as arguments against the statute or its underlying salutary policy, but only to demonstrate that the choices with which the Legislature was confronted were hardly between undiluted right and wrong. They were hard choices, and clearly made with the understanding that protection of the statutory policy would be achieved in many cases by compromising other cherished values. The Legislature has made its judgment, which must be given effect. But in deliberate fashion it chose to implement this with remedies and sanctions in language which leaves no room for construction. In weighing the relevant considerations, it determined for the first time that such an employment practice is unlawful and provided, for violation thereof, the private remedy of job restoration and reimbursement of lost wages. The lawmakers allowed this much, but no more. Had they intended to allow the additional remedy of all compensatory and punitive damages, this could easily have been done, and it is fundamental that what the Legislature omits the courts are not free to supply. Craster v. Board of Commissioners, Newark, 9 N.J. 225, 230 (1952); Hoffman v. Hock, 8 N.J. 397, 409 (1952). Although, as the majority holds, the statutory fines and penalties may be "of insufficient financial moment to act as a deterrent", and the program of compensatory and punitive damages which it has created will be more effective than that "envisioned by the statute", these are not judgments which courts are free to make. If the statutory *185 sanctions do not meet the problem, or if the Commissioner of Labor is not exercising the powers confided to him as aggressively as he should, the solutions lie with another branch of government than ours.
In arriving at its result the majority hypothesizes cases in which the discharged employee will find reemployment without delay, so that absent the threat of punitive damages the employer will be undeterred from committing the unlawful retaliatory firing. The fault I find in this logic lies in the fact that at the time of firing the employer cannot foretell when or if the employee will find new employment. He knows only that he will be answerable for job restoration and all lost wages in addition to the threat of fines and imprisonment. Therefore the availability of additional relief in the form of punitive damages is unnecessary.
Cases relied on by the majority from outside jurisdictions are of little help, since each turns on its own particular factual circumstances and the statutory enactments addressed. But they are vitally distinguishable from this case, however, in that none involved statutes which provided so complete a private remedy to the aggrieved employee as ours. Without attempting an exhaustive catalogue thereof, it is clear that they rest on findings that there was no statutory remedy, or that the statute contained purely penal sanctions which gave no private relief to the employee. Frampton v. Central Indiana Gas Co., 260 Ind. 249, 297 N.E.2d 425 (Sup.Ct. 1973); Sventko v. Kroger Co., 69 Mich. App. 644, 245 N.W.2d 151 (Ct.App. 1977); Kelsay v. Motorola, Inc., supra; Raden v. City of Azusa, 158 Cal. Rptr. 689, 97 Cal. App.3d 336 (D.Ct.App. 1979).
Texas Steel Co. v. Douglas, 533 S.W.2d 111 (Tex.Civ.App. 1976), differs from this case in that recovery of damages was allowed under a statute which prohibited discriminatory discharges and which specifically created liability "for reasonable damages suffered by an employee as a result of the violation." (Id. at 113).
*186 In Brown v. Transcon Lines, 284 Or. 597, 588 P.2d 1087 (1978), prior to plaintiff's claim for retaliatory discharge the Supreme Court of Oregon had held that such a firing was redressable. This case decided only that the common-law right of action so created was not nullified by a later enacted statute declaring such a firing to be an "unlawful employment practice."
Although my colleagues are satisfied that the common-law cause of action "would clearly exist" in New Jersey even without the statute, a vital contrast between the Brown case and this lies in the fact that no New Jersey court had ever recognized such a right of recovery. Therefore the majority view that, because the Legislature did not "explicitly express such an intent," it cannot say that the statutory remedy is exclusive, finds no support either in logic or by analogy with Brown. The Legislature could not be expected to declare its remedy exclusive of all others when none other even existed.
As to the majority's holding that the employee's private remedy of job restoration and reimbursement of wages may be had in an administrative proceeding, this is nowhere suggested by the language of the statute. I cannot reconcile the majority's view that the Commissioner "obviously ... cannot conduct a disorderly person proceeding" with its conclusion that he may engage in the "adjudication of claims for the stipulated compensatory relief." The authority for neither is articulated in the act. That § 39.2 of the statute authorizes the Commissioner to sue in a summary proceeding for the recovery of a penalty does not imply that he may grant legal and equitable remedies. The right of job restoration constitutes mandatory injunctive relief and is subject to the entire range of equitable defenses which lie beyond the expertise of the Department of Labor. Nothing in the enactment reposes equity powers in this administrative agency.
But of much greater importance, the Commissioner of Labor may not adjudicate these claims for the simple reason that he *187 does not have the jurisdiction to do so. As the majority acknowledges, such jurisdiction is not to be found in the Division of Workers' Compensation. That Division enjoys only original jurisdiction of "all claims for workers' compensation benefits under this chapter." N.J.S.A. 34:15-49. Like inferior courts of limited jurisdiction, the jurisdiction of an administrative agency is never presumed, but depends entirely upon the validity and terms of its enabling statute. 73 C.J.S., Public Administrative Bodies, § 116; 2 Am.Jur.2d, Administrative Law, § 328.
It is fundamental in the statute that the Compensation Bureau has jurisdiction to award compensation only "for personal injuries to, or for the death of," an employee "by accident arising out of and in the course of his employment." [Nagy v. Ford Motor Co., 6 N.J. 341, 348 (1951)]
Any reasonable doubt of the existence of a particular power in the Division is to be resolved against such power. [Conway v. Mr. Softee, Inc., 51 N.J. 254, 258 (1968)]
[It is a] basic principle that an administrative officer is a creature of legislation who must act only within the bounds of the authority delegated to him. [Elizabeth Federal S & L Ass'n v. Howell, 24 N.J. 488, 499 (1957)]
Furthermore, a court should not find authority in an administrative agency "to issue various types of affirmative remedial orders * * * unless the statute under consideration confers it expressly or by unavoidable implication." Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper, 56 N.J. 579, 598 (1970).
Although the majority declares that restoration and reimbursement hearings "would now clearly come within the initial hearing jurisdiction of the Office of Administrative Law" (n. 6), N.J.S.A. 52:14F-6(a) provides that administrative law judges shall be assigned "to an agency." Therefore, the jurisdiction of the administrative law judge could not exceed that of the agency to which he has been assigned. This conclusion is fortified by N.J.S.A. 52:14F-8(a) which precludes the assignment of an administrative law judge to hear contested cases with respect to the Division of Workers' Compensation except *188 where a specific request is made therefore by that agency. Obviously, the agency cannot expand its jurisdiction merely by requesting an administrative law judge to hear cases outside its special jurisdiction. The statutory remedies may be pursued only by an action in the Superior Court.
I would remand the matter to the trial court for a determination as to plaintiff's right to job restoration and reimbursement for lost wages under the statute. I would affirm the determination by the Commissioner of Labor that he has no jurisdiction to determine the question of job restoration and reimbursement for lost wages and his refusal to impose a penal sanction.
NOTES
[1] The trial judge's order of transfer to a state administrative agency preceded the September 11, 1978 amendment of R 1:13-4, which expressly authorized such transfers. The power to make such a transfer may have been, however, implicit prior to the rule amendment. Cf. Patrolmen's Benev. Assoc. v. City of Elizabeth, 146 N.J. Super. 257, 263 (App.Div. 1976); Kaczmarek v. New Jersey Turnpike Authority, 77 N.J. 329 (1978).
[2] No question has been raised as to whether the order of transfer was final or interlocutory and we need not determine that issue here since we are in any event satisfied that even if final, plaintiff's right to prosecute this appeal was preserved by reason of the timely-filed motion for leave to appeal.
[3] Comment h on § 874A suggests that the primary test for determining whether the courts should provide a tort remedy is whether such a remedy "is consistent with the legislative provision, appropriate for promoting its policy and needed to assure its effectiveness." Id. at 71. Of further significance is the adequacy of existing remedies. The considerations are all, in our view, and for the reasons stated in Kelsay, acutely met here.
[4] Prior to the September 1979 effective date of the New Jersey Code of Criminal Justice, N.J.S.A. 2A:169-4, repealed by the Code, provided generally for disorderly persons offenses, fixing "unless otherwise expressly provided," imprisonment for a period not exceeding six months and a fine not exceeding $500 or both. N.J.S.A. 2A:169-4 had been amended in 1968 to reduce the maximum fine from $1,000 to $500. Hence, when N.J.S.A. 34:15-39.1 was adopted, the $1,000 maximum applied. The Code penalty for a disorderly persons offense (as contrasted to a petty disorderly persons offense) is a maximum fine of $1,000 and maximum imprisonment of six months. See, respectively, N.J.S.A. 2C:43-3(c) and 2C:43-8. See further as to penalties for disorderly persons offenses generally, In re Buehrer, 50 N.J. 501 (1967).
[5] See R. 7:3-1 incorporating the formal complaint requirement of R. 3:2.
[6] Such hearings would now clearly come within the initial hearing jurisdiction of the Office of Administrative Law. See N.J.S.A. 52:14F-1, et seq.
[7] We do not here consider, because not necessary to our disposition, the question of whether the Commissioner may decline to exercise the statutory quasi-judicial jurisdiction we have here found that the statute confers. See City of Hackensack v. Winner, supra.
[8] Compare, for example, N.J.S.A. 34:13A-5.4(c) according to Public Employees Relations Commission "exclusive power" to deal with alleged unfair labor practices. And cf. City of Hackensack v. Winner, supra.
[9] These observations in Raden are by way of dicta. The case before the court was required to be decided pursuant to the statutory complex existent when the cause arose. At that time, the statutory scheme provided for compensatory damages, administratively assessed, in an amount of one-half of the ultimate compensation award, subject to a ceiling of $10,000. This remedy was held by the court to be inadequate, entitling the employee to maintain a judicially cognizable tort or tort-like action. While the case was pending, the statute was amended to provide for administratively granted compensatory relief of reinstatement and lost wages, similarly to the New Jersey statute. It was in connection with the amended statute that the court made these observations.
[10] The Gray v. Serruto holding has been codified by the Legislature in its recent amendment of N.J.S.A. 10:5-13, which now expressly provides to the victim of discrimination the alternative of pursuing either an administrative or a judicial cause of action. L. 1979, c. 404.
[11] We do, however, note that in any event the transfer could not have been made to the Division of Workers' Compensation for adjudication by it since that Division has been accorded no adjudicative jurisdiction over retaliation complaints by the Legislature. If anything, the transfer should have been directly to the Commissioner of Labor and Industry.