DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Rebecca Crosier, ("Crosier") appeals from the order of the Summit County Court of Common Pleas granting summary judgment to Quikey Manufacturing Co., Inc. ("Quikey"). This Court affirms.
Crosier was employed by Quikey as an assembly line worker. Quikey is a company that produces advertising specialties, such as key chains, mirrors, and coin purses. On March 5, 1996, Crosier commenced a medical leave of absence for a work-related injury to her right arm. When Crosier failed to return to work at the expiration of a six-month medical leave, Quikey terminated Crosier's employment on October 7, 1996. Quikey's letter of termination explained that the reason for the termination was Crosier's failure to return to work following the maximum medical leave allowable. It further stated that this was part of an established company policy. The letter of termination stated in pertinent part:
 This letter is to inform you that according to our records your last date worked here was March 5, 1996. The policy in our employee handbook states that the maximum medical leave is six (6) months if [sic] the employee fails to return to work the day following the expiration of said medical leave, the employee is considered to have voluntarily resigned. Therefore, your employment with Quikey Manufacturing is terminated as of this date.
On May 18, 1998, Crosier filed a complaint in the court of common pleas, alleging that her employer, Quikey, discharged her in violation of R.C. 4112.02(A) 4112.02(N), 4112.14, and 4112.99 and Ohio public policy.[1] Crosier contended that she was wrongfully terminated due to discrimination on the basis of age and handicap, rather than on the basis of established company policy regarding leaves of absence.
Upon motions duly made by the respective parties, the trial court denied Crosier's motions to compel discovery and to continue summary judgment proceedings pursuant to Civ.R. 56(F), and granted Quikey's motion for summary judgment. The trial court concluded: (1) the motions to compel discovery and continue summary judgment should be denied, (2) Crosier did not establish a prima facie case of either age or handicap discrimination, (3) assuming, arguendo, that she did establish a prima facie case, Crosier did not demonstrate that the reason proffered for her discharge was pretextual, and (4) there was no evidence that the discharge was in retaliation for making a workers' compensation claim.[2]
Crosier now appeals to this Court and presents two errors for review.
 Assignment of Error I The trial court below erred in overruling and denying the motions to compel vitally needed discovery and/or for continuance of summary judgment proceedings, duly filed under Ohio Civil Rules 37 and 56(F) by the plaintiff-appellant (the "former employee" and/or "Crosier") in this action for employment discrimination and wrongful discharge by the defendant-appellee ("Quikey" or "former employer"), because of handicap, age and/or retaliation, violative of the Ohio Civil Rights Act (the "OCRA"), Chapter 4112, Ohio Revised Code ("R.C.") and of the provisions of the Ohio Administrative Code ("OAC") duly adopted by the Ohio Civil Rights Commission ("OCRC") under the OCRA, as well as of Ohio public policy under, e.g., Collins v. Rizkana (1995), 73 Ohio St.3d 65, 652 N.E.2d 653; and the trial court thereby erred in even entertaining the motion for summary judgment made by the defendant-appellee.
In her first assignment of error, Crosier contends that the trial court erred in denying her motion to compel discovery and her motion to continue summary judgment proceedings. Crosier asserts, pursuant to Civ.R. 37 and 56(F), that Quikey wrongfully objected and failed to respond to many of her discovery requests, and she, therefore, was not in a position to respond to Quikey's motion for summary judgment.
A trial court has broad discretion in ruling on a motion to compel discovery. State ex rel. The V. Cos. v. Marshall (1998), 81 Ohio St.3d 467,469. Similarly, the trial court has wide discretion to grant or deny a request for a continuance pursuant to Civ.R. 56(F). Walter v. AlliedSignal, Inc. (1999), 131 Ohio App.3d 253, 264, appeal not allowed (1999), 86 Ohio St.3d 1455. An abuse of discretion involves more than an error of judgment; it implies that the attitude of the court is unreasonable, unconscionable, or arbitrary. State v. Adams (1980),62 Ohio St.2d 151, 157. In the absence of an abuse of discretion, an appellate court will not overturn the trial court's ruling on discovery matters. State ex rel. The V. Cos., supra. The record in this case does not support a finding that the trial court abused its discretion in ruling on these motions.
In order to determine whether the trial court abused its discretion in this matter, a reviewing court must look to the record in regard to the manner in which discovery was conducted below. Crosier made her first discovery request on May 18, 1998, the same day she filed her complaint. Quikey responded on June 18, 1998. Crosier made a second discovery request on October 23, 1998, and Quikey responded on November 30, 1998.
Nearly four months later and with no further discovery conducted by Crosier, Quikey filed a motion for summary judgment on March 12, 1999. In response, on March 19, 1999, Crosier filed a motion for a nine-day continuance in order to conduct further discovery and fully brief its opposition to summary judgment, observing that such a continuance would not conflict with the trial which was set for June 1, 1999. The trial court granted a continuance until March 31, 1999. Crosier conducted no discovery during this period. On March 31, 1999, Crosier filed a motion for a four-week continuance, again, in order to conduct further discovery and fully brief its opposition to summary judgment. Crosier also argued that the delay was justified in order to obtain an anticipated decision in a case pending before the United States Supreme Court. The trial court granted a continuance until April 19, 1999. Crosier again conducted no discovery during this period. On April 28, 1999, beyond the date of the previously permitted continuance, Crosier filed yet another motion for a continuance of nine weeks in order to conduct further discovery and to await allegedly relevant decisions of the United States Supreme Court. Granting Crosier's motion would require a continuance of the previously scheduled final pretrial and trial. The trial court once again granted the motion as requested, until "not later than" July 7, 1999, and indicated that the pretrial and trial of this matter were continued. During this nine-week extension of time, Crosier conducted one deposition on June 28, 1999 of Mary Kay Weygandt, Crosier's supervisor during her employment at Quikey. Crosier failed to obtain much of the information that she had hoped to obtain from this witness because of a failure to request that she or someone — bring relevant records with her to the deposition.
On the final day of the third continuance granted by the trial judge, July 7, 1999, Crosier opposed Quikey's motion for summary judgment with a motion for continuance of the summary judgment proceedings pursuant to Civ.R. 56(F) and a motion to compel discovery. In this motion, Crosier alleged — for the first time that Quikey entered unreasonable objections and incomplete responses to her initial discovery request filed more than one year earlier. Quikey responded by asserting that Crosier's initial discovery request was overly broad, vague, and not stated with "reasonable particularity." Quikey also asserted that its responses to Crosier's second discovery request provided much of the substance sought by the earlier request. The trial judge found Quikey's objections to the discovery requests to be reasonable and also found that Quikey responded to all properly requested discovery. Accordingly, the trial judge denied Crosier's motion to compel discovery, found the Civil Rule 56(F) motion to be moot, and ordered Crosier to respond to Quikey's motion for summary judgment on or before August 16, 1999. On October 19, 1999, the trial judge granted summary judgment to Quikey.
Crosier filed only two discovery requests in the nearly ten months prior to the filing of Quikey's motion for summary judgment. During the next seven months following the motion and before judgment was entered, Crosier conducted only one deposition. During this latter period, Crosier requested and was permitted no less than three extensions of time in which to conduct further discovery, yet only one deposition was held. Significantly, Crosier did not dispute the quality of Quikey's replies to her first discovery requests until after Quikey filed its motion for summary judgment and more than a year after the responses were initially made. In the interim, Quikey responded to Crosier's second discovery request, which was a request for the production of documents, and yielded many additional records. These documents would appear to have enabled Crosier to refine her discovery requests. In any event, Crosier failed to take advantage of the opportunity of time.
Crosier's claim that discovery was "almost entirely thwarted" is not substantiated. The trial court provided ample time in which to conduct discovery. The record supports the conclusions of the trial court that Crosier's initial discovery requests were overly broad, that Quikey's objections were reasonable, and that Quikey replied to all proper requests. At the same time, Crosier had sufficient opportunity to refine its discovery requests in order to obtain additional information. Crosier bore the responsibility of addressing discovery matters promptly.
Upon review, this Court finds that the trial court did not abuse its discretion in denying Crosier's motion to compel discovery or in failing to continue the summary judgment proceedings. Crosier's first assignment of error is overruled.
 Assignment of Error II The trial court below, in any event, erred in granting summary judgment, thereby dismissing the plaintiff-appellant former employee's claims for relief for employment discrimination and wrongful discharge.
In her second assignment of error, Crosier contends that the trial court erred in granting summary judgment to Quikey.
 A. Summary Judgment
Appellate review of a lower court's entry of summary judgment is denovo. McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. Therefore, this Court will apply the same standard used by the trial court. A motion for summary judgment must be granted if: (1) the moving party demonstrates that there remains no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. See Civ.R. 56(C). See, also, Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
The moving party initially bears the burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. The movant must point to some evidence in the record, of the type listed in Civ.R. 56(C), in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but, instead, must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v. Henkle (1991), 75 Ohio App.3d 732,735.
In support of its motion for summary judgment, Quikey argues that Crosier is unable to prove a prima facie case of either handicap or age discrimination and that, even if Crosier does establish a prima facie case, she is unable to establish that the legitimate, nondiscriminatory reason for her discharge was a pretext for such discrimination. Crosier's position is that she is unable to establish a prima facie case of discrimination because of Quikey's failure to make reasonable accommodations and that Quikey's medical leave of absence policy is unlawful. An employer may obtain summary judgment in a discrimination case by demonstrating either that the employee's proffered evidence fails to establish a prima facie case or by presenting a legitimate, nondiscriminatory explanation for the adverse employment action about which the employee fails to create a factual dispute. See Barker v.Scovill, Inc. (1983), 6 Ohio St.3d 146, 148. In this case, this Court finds that summary judgment in favor of Quikey was appropriate for both reasons.
 B. Handicap Discrimination
R.C. 4112.02(A) makes it unlawful for an employer to discharge without just cause or otherwise discriminate against a person with respect to any matter related to employment on the basis of handicap.
 1. Prima Facie Case
Crosier concedes an inability to make a proper prima facie case through direct evidence. Consequently, in order to establish a prima facie case of handicap discrimination, Crosier must prove the following: (1) that she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because she was handicapped, and (3) that she, though handicapped, can safely and substantially perform the essential functions of the job in question. See Hood v. DiamondProducts, Inc. (1996), 74 Ohio St.3d 298, paragraph one of the syllabus. If there is a failure of proof as to any of the elements, the prima facie case fails. Therefore, in order to prevail, it was incumbent upon Crosier to remove any question from the fact that at the conclusion of her six-month medical leave of absence, she could have safely and substantially performed the essential functions of her job. The record, however, indisputably supports the conclusion that she could not.
Crosier's medical leave of absence commenced on March 5, 1996. According to her own testimony in deposition, Crosier was unable to do any kind of work during her entire leave of absence. She received temporary total disability compensation from Workers' Compensation during the entire leave and after her termination. On her monthly Bureau of Workers' Compensation applications, she indicated that she was uncertain as to when she would be able to return to work. In April of 1996, Crosier told a representative of Quikey that, according to her doctor, she expected to be off work for six to twelve months. Upon being offered a "light duty" assignment, Crosier declined because she was physically unable to perform the work. Again in August of 1996, a representative of Quikey asked if she could do "light duty" and Crosier replied that she could not. In September, Crosier failed to return to work at the expiration of her six-month medical leave. At that time, according to her own testimony, she was still disabled and not able to do any kind of work, including light duty. After a month without any information regarding a change in status, Quikey terminated Crosier's employment. Crosier received a letter indicating that her employment was terminated as of October 7, 1999. At that time, Crosier testified that she was still disabled and had no idea how long that condition would continue.
Upon receipt of the termination letter and in response to Quikey's suggestion within it, Crosier called Quikey to obtain information regarding medical insurance and her 401K plan. Notably, Crosier did not request an extension of her leave of absence, nor did she request "light duty" or any other sort of accommodation for her job. When, ultimately, in January of 1997, Crosier was released for work by her doctor, she did not contact Quikey. Crosier testified that she never requested an accommodation of her job and never requested an extension of medical leave.
Because Crosier failed to establish that she was substantially able to perform the essential functions of her job, she cannot establish a prima facie case of handicap discrimination. Moreover, Quikey has suggested an absence of genuine issue of material fact as to this element of Crosier's claim and Crosier has not pointed to anything in the record that places this element in dispute.
 2. Accommodation
Crosier argues that Quikey had a duty to offer a reasonable accommodation for her handicap, and having failed to do so, was unable to establish that Crosier could not have safely and substantially performed the essential functions of her job. When requested, an employer must make a reasonable accommodation for a handicapped employee, but the employee has the burden of requesting that accommodation. Pfost v. Ohio Atty.Gen. (April 20, 1999), Franklin App. No. 98-AP-690, unreported; Taylorv. Principal Financial Group (C.A.5, 1996), 93 F.3d 155, 165. "The employer is not required to speculate as to the extent of the employee's handicap or the employee's need or desire for an accommodation." Ganttv. Wilson Sporting Goods Co. (C.A.6, 1998), 143 F.3d 1042, 1046-47. Nevertheless, in the case at bar, on two occasions during her leave of absence, Quikey did, in fact, offer Crosier "light duty," an accommodation accepted by this employee on occasions in the past when she had suffered injuries to her arm. Crosier rejected the offer, without suggesting an alternative accommodation, and testified that she never requested any accommodation that would enable her to substantially perform the essential functions of her job. Crosier's failure to do so must preclude any claim that Quikey failed to reasonably accommodate her handicap.
Crosier also argues that Cleveland v. Policy Mgt. Sys. Corp. (1999),526 U.S. 795, 143 L.Ed.2d 966 obviates the requirement of substantially performing the essential functions of her job from the proof required to indirectly establish a prima facie case of handicap discrimination.Cleveland, however, does not remove this element of proof. Instead, it explains that one may, in fact, be totally disabled under Social Security Disability Insurance ("SSDI") application guidelines, but nevertheless be capable of performing the essential functions of one's job. Id.,526 U.S. at 804, 143 L.Ed.2d at 976. This is so because the focus of SSDI is distinct and does not consider, for example, the effect of a reasonable accommodation on the ability to do work. Id., 526 U.S. at 803,143 L.Ed.2d at 975. After reaching this conclusion, however, the United States Supreme Court made it very clear that if such a contradiction occurs, the employee bears the burden of going forward with evidence to explain how she can nevertheless perform her job. Id., 526 U.S. at 806,143 L.Ed. at 976-77.
Applying Cleveland to the case at bar permits the possible conclusion that Crosier was temporarily totally disabled in the eyes of the Bureau of Workers' Compensation, yet still may have been able to perform her job. However, Crosier not only testified that she was temporarily totally disabled in the eyes of the Bureau of Workers' Compensation, but she also stated that she was simply unable to do her regular job, "light duty," or any work at all. Moreover, she never attempted to make a distinction between her status before the Bureau of Workers' Compensation and her status under the test for handicap discrimination. Finally, she never suggested or requested any sort of accommodation that would enable her to perform the essential functions of her job. Consequently, Cleveland does not enable Crosier to establish a prima facie case of handicap discrimination.
 3. Independent, Nondiscriminatory Reason for Discharge
Even if Crosier were able to establish a prima facie case of handicap discrimination, the burden then shifts to the employer to articulate an independent, nondiscriminatory reason for the discharge. Plumbers Steamfitters Commt. v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192,197. Quikey asserts that Crosier was lawfully discharged pursuant to its medical leave policy, requiring termination of employment if an employee fails to return to work at the conclusion of six months. The policy on medical leave, as stated in the employee handbook, is as follows:
 Medical leave will be granted for up to thirty (30) days at a time upon presentation of satisfactory evidence to your immediate supervisor and subsequent approval by the company. Medical leave may be extended in thirty (30) day increments up to a maximum of six (6) months. If you do not return to work on the first day following expiration of an approved medical leave of absence, you will be considered to have voluntarily resigned and will be removed from the company's payroll.
(Emphasis added.) Crosier failed to return to work at the conclusion of six months of medical leave and Quikey presented that as the reason for her discharge. In so doing, Quikey has rebutted the presumption of discrimination that is raised by a prima facie case. Weiper v. W.A. Hill Assoc. (1995), 104 Ohio App.3d 250, 263, appeal not allowed (1995),74 Ohio St.3d 1446.
 4. Pretext
The burden then shifts once again to the employee to attempt to prove that the reason put forth by the employer was pretextual. Plumbers Steamfitters Commt., 66 Ohio St.2d at 198. The employee may carry that burden by proving not only that the employer's reason for discharge was false, but also that the discrimination was the real reason. Weiper,supra, citing St. Mary's Honor Ctr. v. Hicks (1993), 509 U.S. 502, 510,125 L.Ed.2d 407, 418-19. Crosier asserts that the medical leave policy is facially unlawful. This Court does not find the policy to be unlawful on its face. The policy does not distinguish between handicapped and non-handicapped individuals and appears to impose a uniform approach, requiring the termination of any employee who does not return to work at the expiration of a leave period. The general policy regarding all leaves, i.e. personal, funeral, military, and medical, states:
 Unless an extension is requested and and approved, you are expected to return to work at the end of the approved leave. If you fail to report to work on the first workday after the expiration of the leave, you will be considered to have voluntarily quit.
Crosier did not return to work at the end of her approved leave and she did not request an extension. Further, Crosier failed to present evidence that the policy has been applied inconsistently or unfairly.
In Ohio it is not unlawful to discharge an employee because the employee is unable to work as a result of a work-related injury. Barkerv. Dayton Walther Corp. (1989), 56 Ohio App.3d 1, 3. The law does not require employers to wait indefinitely for employees to return to work. Requiring a job to be held open until the employee recovers is not always practicable. While employers are required to make reasonable accommodations for an injured worker, at a certain point, holding a job open becomes unreasonable. Continued performance of the business necessitates that there be a point at which the disabled worker must be replaced.
 [T]he public policy of Ohio proscribing discrimination against persons with physical handicaps does not extend so far as to require an employer to continue the employment of a disabled employee who is unable to perform his job duties as a result of a work-related injury.
Barker, 56 Ohio App.3d at 4. See, also, Scott v. Univ. of Toledo (2000),137 Ohio App.3d 538, 544, appeal not allowed (2000), 89 Ohio St.3d 1456;Brown v. Lear Operations Corp. (Sept. 30, 1999), Sandusky App. No. S-99-013, unreported; Russell v. Franklin Cty. Auditor (Sept. 28, 1999), Franklin App. No. 98AP-1502, unreported, appeal not allowed (2000),88 Ohio St.3d 1415; Sheppard v. McSweeney's Inc. (Sept. 27, 1995), Lawrence App. No. CA-95-4, unreported; Flowers v. Care Life (Dec. 17, 1993), Muskingum App. No. CT 93-24, unreported; Mir Masood Ali v. ChelseaCatering (Feb. 28, 1997), C.A. 6 No. 96-3009, unreported. See, also,Malone v. Aramark Serv., Inc. (2000), 334 N.J. Super. 669, 677;760 A.2d 833, 837 (The majority view in states that have considered the question is that an employer need not hold an employee's job open for as long as it takes the employee to recover from a work-related injury).
Accordingly, because Crosier failed to establish a prima facie case of handicap discrimination, and because she failed to place into genuine issue the question of whether the independent, nondiscriminatory reason for discharge was pretextual, the trial court did not err in granting summary judgment to Quikey on the basis of handicap discrimination.
 C. Age Discrimination
R.C. 4112.02(A) makes it unlawful for an employer to discharge without just cause or otherwise discriminate against a person with respect to any matter related to employment on the basis of age. R.C. 4112.14
specifically prohibits an employer from discriminating against a job applicant or discharging, without just cause, any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job.
 1. Prima Facie Case
In order to prove employment discrimination on the basis of age, a plaintiff may establish a prima facie case through the four-part evidentiary standards set forth in Barker, 6 Ohio St.3d at 147-48, adopted from McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 802,36 L.Ed.2d 668, 677, and modified and explained in Kohmescher v. KrogerCo. (1991), 61 Ohio St.3d 501, syllabus. A plaintiff may also establish a prima facie case of age discrimination directly by presenting evidence, of any nature, showing that the employer more likely than not was motivated by discriminatory intent. Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, paragraph one of the syllabus. Regardless of the method utilized, the employee, at all times, bears the burden of proving that he or she was discriminated against because of age. St. Mary's HonorCtr. v. Hicks (1993), 509 U.S. 502, 511, 125 L.Ed.2d 407, 416. Crosier concedes a lack of direct evidence to establish a prima facie case of age discrimination. Consequently, consideration turns to whether proof of age discrimination has been established indirectly.
The Supreme Court of Ohio has stated that a plaintiff may establish a prima facie case of age discrimination in violation of R.C. 4112.14
(former R.C. 4101.17) indirectly, by proving: (1) that he or she was a member of the statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class. Kohmescher, 61 Ohio St.3d at syllabus. This analysis also applies to claims brought pursuant to R.C. 4112.02. Byrnes v. LCI Communications Holdings Co. (1996), 77 Ohio St.3d 125, 128 certiorari denied (1997), 521 U.S. 1104,138 L.Ed.2d 989. The fourth element of the McDonnell Douglas test has been modified by the United States Supreme Court, for purposes of age discrimination cases, to require replacement by an individual "substantially younger" than the plaintiff. O'Connor v. Consolidated CoinCaterers Corp. (1996), 517 U.S. 308, 313, 134 L.Ed.2d 433, 439. While the Supreme Court of Ohio has not yet been confronted with an occasion to apply that holding, this Court has done so. Outzen v. Continental Gen.Tire, Inc. (Feb. 2, 2000), Summit App. No. 19604, unreported, appeal not allowed (2000), 89 Ohio St.3d 1413.
In the case at bar, Crosier failed to establish a prima facie case of discrimination on the basis of age because, by her own testimony, she was not able to perform the job at the conclusion of her medical leave.
 2. Legitimate, Nondiscriminatory Reason for Discharge and Pretext
However, even if Crosier had established a prima facie case of age discrimination, summary judgment would still have been inappropriate. As discussed above, Quikey has articulated a legitimate, nondiscriminatory reason for the discharge of Crosier in the application of its medical leave policy and Crosier has not established that reason to be pretextual. In the absence of a prima facie case of age discrimination, and considering the failure of Crosier to raise a genuine issue in regard to whether Quikey's reason for the discharge was pretextual, this Court finds that the trial court did not err in granting summary judgment to Quikey on the basis of age discrimination.
 D. Public Policy
Crosier also argues that her discharge violates public policy. While the public policy of Ohio clearly opposes discrimination on the basis of age or handicap, Crosier has not proved that her discharge jeopardizes that policy. See Kulch v. Structural Fibers, Inc. (1997),78 Ohio St.3d 134, 151, certiorari denied (1997), 522 U.S. 1008,139 L.Ed.2d 423. Consequently, the argument that Crosier's discharge violates public policy must fail. Sadinsky v. EBCO Mfg. Co. (1999),134 Ohio App.3d 54, 62.
 E. Conclusion
Because Crosier has failed to establish a prima facie case of either handicap or age discrimination, and because Quikey has set forth a legitimate, nondiscriminatory reason for the discharge of Crosier, the trial court correctly granted Quikey's motion for summary judgment. Crosier did not fulfill her obligation to present evidence controverting that which was proffered by Quikey. Consequently, there is no genuine issue of fact and reasonable minds could only conclude that Crosier was terminated for good business reasons and without discriminatory intent. Crosier's second assignment of error is overruled.
Finding no merit in either assignment of error, the judgment of the court of common pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ DONNA J. CARR
BAIRD, P. J., WHITMORE, J., CONCUR
[1] Crosier's complaint also named her supervisor, Mary Kay Weygandt, as a defendant and included additional claims based upon the principles of implied contract and promissory estoppel. Weygandt was subsequently dismissed as a party to the action and the claims of implied contract and promissory estoppel were also dismissed. Neither Weygandt nor the additional claims are a part of this appeal.
[2] This Court observes that Crosier's complaint failed to cite to R.C. 4112.90 or allege that Quikey acted in retaliation for Crosier's filing of a Workers' Compensation claim. This claim was raised for the first time as a bare assertion in Crosier's opposition to Quikey's motion for summary judgment. Nevertheless, this Court agrees with the trial court that Crosier failed to provide any evidence that hers was a retaliatory discharge. Moreover, Crosier not only failed to point to any evidence in support of this claim, but failed to raise a genuine issue of material fact. Dresher, 75 Ohio St.3d at 293.