192 N.J. Super. 403 (1983)
470 A.2d 45
JOHN GALANTE, JR., PLAINTIFF,
v.
SANDOZ, INC., DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided November 3, 1983.
*404 Dennis J. Lenard, for plaintiff (Nusbaum, Stein, Goldstein & Bronstein, attorneys).
Linda G. Harvey, for defendant (Shanley & Fisher, attorneys).
*405 NEWMAN, J.S.C.
Plaintiff, John Galante, Jr., (the employee), instituted this action for wrongful discharge under N.J.S.A. 34:15-39.1 and the common law against the defendant Sandoz, Inc., (the employer), alleging that his termination was the result of his utilizing the benefits he was entitled to under the New Jersey's Workers Compensation Act (Act). The employer now brings this motion for summary judgment alleging that the employee was discharged because of excessive absenteeism and not because he sought workers compensation benefits. The employer contends that employee's failure to make a prima facie showing of discrimination entitles them to judgment as a matter of law. The employee has cross moved for a partial summary judgment on the ground that he was wrongfully discharged.
The facts of this motion are not in dispute insofar as its ripeness for summary disposition is concerned. The employee was hired as a mail route truck driver at will on August 25, 1980. On December 1, 1980, the employer instituted a new absence control policy to combat chronic absenteeism which is considered by the employer to be a major cause of low productivity.[1] On December 15, 1980 the employee stepped in an oil spill on the employer's premises and fell, injuring his back. The employee has filed for and received monetary benefits pursuant to the Workmen's Compensation Act.
Under the employer's absence control policy, absences are computed in terms of "instances". An instance is defined as the total period that an employee is out of work; so one day or five consecutive days will equal one instance. After seven instances an employee is put on probation. After nine instances he is *406 fired. The only absences for which there are exemptions for lost time are bereavement, vacations or jury duty.
Subsequent to the employee's back injury, he was out of work eleven instances before his termination in August of 1981. However, the employee was given notice after his seventh instance that he could be terminated upon his next absence. He was also informed at this time that the employer was aware that some of the absences were the product of a work related injury and that this would be taken into consideration. After ten instances, the employee was placed on probation for 90 days. He was suspended for two days for the eleventh absence which occurred during the probationary period and was then terminated. During this eight month period the employee missed a total of 44 days. Seventy-five percent or at least eight of the employee's eleven instances of absence from work were the result of the back injury sustained in the work related accident. The parties agree that the employee's dismissal was solely the result of absenteeism, which was deemed excessive under the new absence control policy of the employer.
The employee's argument is two-fold. First, a firing which is the result of absenteeism occasioned by a work related injury is a discriminatory firing under the recent decision in Lally v. Copygraphics, 173 N.J. Super. 162 (App.Div.), aff'd 85 N.J. 668 (1981). Second, the employee characterizes the failure of the absence control policy to excuse the absences of employees who take time off to recuperate from work related injuries as contrary to the public policy surrounding the enactment of the Workers' Compensation Law. He contends that under the present Workers' Compensation Law an employee is entitled to excused lost time from work as an actual benefit of workers' compensation, or as a benefit which is reasonably implied from the legislative scheme. The failure of the employer to include workers who take time off because of work related injuries within the exemptions under the absence control policy frustrates the injured worker in the exercise of his rights under the statute, and is violative of the public policy of the Act which is *407 to compensate workers for their work related injuries. See Daniello v. Machise Exp. Co., 119 N.J. Super. 20, aff'd 122 N.J. Super. 144 (App.Div. 1973). Since the absence control policy, it is argued, contravenes the legislative intent of the Act, dismissal of the employee predicated on the absence control policy is either a fortiori discriminatory or a wrongful discharge.
The employer maintains that the employee's termination was solely a result of the neutral application of its absence control policy. Special consideration was given to this employee in that he was permitted two additional instances of absence above what was required for termination under the absence control policy. The absence control policy is a legitimate attempt on the part of an employer to control chronic absenteeism and does not violate public policy. As an employee at will the employer has a right to fire him for any reason that does not contravene public policy and it has not done so here. Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980).
For reasons elaborated on hereafter, plaintiff's dismissal was not unlawful, wrongful or discriminatory. The employer's absence control policy which includes as unexcused those absences occasioned by work related injuries is not contrary to public policy.
N.J.S.A. 34:15-39.1 states that:
[I]t shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmens compensation benefit from such employer....
To make a prima facie case for a retaliatory discharge the employee must prove: (1) that he made or attempted to make a claim for workers' compensation; and (2) that he was discharged in retaliation for making that claim. Lally v. Copygraphics, supra; 2A Larson, Workmen's Compensation Law, § 68.36(c) (1983). The record reflects that the employee did file a claim for compensation after the accident, but the employee failed to offer even a scintilla of proof that his termination predicated upon the application of the absence control policy *408 was a retaliatory move on the part of his supervisors. Here, the termination occurred approximately eight months after the accident and claim were filed. His immediate supervisor, Robert Sicoli, did not even know he had filed a workers' compensation claim, and thought that the employee had filed for benefits after he left the defendant's employ. The supervisor's credibility is not challenged. There is absolutely no evidence that the fact that a claim for benefits had been filed entered into the decision to recommend the employee for termination as a result of his excessive absenteeism. There is no genuine issue of material fact and as recognized in Pierce v. Ortho Pharmaceutical, supra, summary judgment is an appropriate procedure for the disposition of this kind of case.
It is the absolute lack of any evidence of a discriminatory discharge which distinguishes this case from Lally v. Copygraphics, supra. In Lally, the plaintiff injured herself in a job related accident. She presented her employer with the bills in an attempt to collect workers' compensation. She was advised that if she persisted in making this kind of trouble she would be fired. She persisted and was fired. Lally, 173 N.J. Super. at 166. Here, even the employee acknowledged that he was not fired because he sought benefits from workers' compensation. He apparently believed, as does the court, that his termination was a result of excessive absenteeism.
In fact, recognizing that he was not being fired as a retaliatory measure, he has styled his second line of argument in more discerning terms. This brings us to the second issue, whether the employer's absence control policy which does not excuse employees who take time off to recuperate from work related injuries is contrary to the public policy surrounding the enactment of the Workers' Compensation Law.
The laudable policy surrounding the enactment of Workers' Compensation legislation is well known. It is a system designed to insure that employees incurring work-connected injuries will be partially and expeditiously compensated for their *409 losses without proof of fault. The principle of law is one of insurance; that the employee is not to bear the entire cost of a work connected injury. See The Right To Seek Workmen's Compensation, 15 Rut.L.Rev. 491 (1961).
The ability of an employer to chill the employee's exercise of his rights under the workers' compensation scheme through retaliatory discrimination motivated the legislature to enact N.J.S.A. 34:15-39.1 et seq. See Lally, 173 N.J. Super. at 169-70. It was the general agreement as to the "opprobriousness of such retaliatory conduct", and "its grave potential for undermining the remedial purposes and functioning of the workers' compensation scheme" that justified the courts' limited intrusion into the at will employment relationship. Id.; see also Pierce v. Ortho Pharmaceutical Corp., supra. The Ortho court recognized the boundaries or the limits on the employment relationship by establishing a public policy exception to the at will doctrine:
Employees will be secure in knowing that their jobs are safe if they exercise their rights in accordance with a clear mandate of public policy. On the other hand, employers will know that unless they act contrary to public policy, they may discharge employees at will for any reason. [Id. 84 N.J. at 73]
It would be completely inappropriate in this instance for a court to further encroach into this sensitive area without a clear expression by the legislature. Thus, to expand the breadth of this statute, as the employee would have us do, to preclude the neutral application of an absence control policy by an employer to an employee who was once injured in a work related accident is to confer upon the employee a benefit not contemplated by the legislature; namely, unlimited absences from work with impunity.
The great majority of jurisdictions have by judicial decision, statute, or both, recognized the tort of retaliatory discharge for filing a workers' compensation claim. 2A Larson, Workman's Compensation Law § 68.36(a) at 13-15, Workmen's Compensation: Recovery for Discharge in Retaliation for Filing Claim; 63 A.L.R.3d 979 (1975). However, no court has expanded the *410 definition of a discriminatory discharge to include a discharge occasioned by the neutral application of an absence control policy to an employee who was injured and collected workers' compensation benefits. The only court which directly addressed this issue rejected the argument. Mitchell v. St. Louis County, 575 S.W.2d 813, 815 (Mo. App. 1978). There, the employee's allegation that she had been absent from work due to a work-related injury and that her injury was covered under workers' compensation did not make out a cause of action for retaliatory discharge under the Missouri Workmen's Compensation Law because of the absence of any evidence of discrimination. Id. The Missouri statute which is substantially identical to N.J.S.A. 34:15-39.1 reads as follows:
No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer.
R.S.Mo. § 287.780 (Supp. 1978). The court in Mitchell went on further to state that "there is certainly nothing within the Workmen's Compensation Law indicating that an employee who has been injured and has returned to work, receiving a regular salary, may be absent repeatedly without penalty." Id.
No New Jersey case has adopted the expansive interpretation of N.J.S.A. 34:15-39.1, which the employee asks this court to adopt. He relies instead on Lo Dolce v. Regional Transit Service, Inc. 77 A.D.2d 697, 429 N.Y.S.2d 505 (S.Ct. 1980). In Lo Dolce, the court in a memorandum opinion failed to reverse the decision of the Workmens' Compensation Board which found that an employee's discharge because of time lost by reason of an employment related accident was discriminatory. The Board refused to permit evidence of the employer's policy of discharging any employee because of excessive absenteeism and the Supreme Court affirmed.
Lo Dolce is distinguishable in two significant ways. First the New York court was reviewing the decision of the N.Y. Worker's Compensation Board which found that a retaliatory dismissal *411 had taken place. Therefore, the court was constrained by the well known principle that it is not the role of the reviewing court to substitute its view of the factual merits of a controversy for that of an administrative agency. The employee in this case had the opportunity under N.J.S.A. 34:15-39.1 to pursue either his complaint for compensatory relief before the Commissioner of Labor and Industry or file a judicially cognizable cause of action in the Superior Court. See Lally v. Copygraphics, supra, 173 N.J. Super. at 178. The employee chose this court as his forum. Unlike the court in Lo Dolce, there is no finding by an agency which circumscribes the action of the court.
Secondly, when reviewing the Worker's Compensation Board's decisions of discriminatory charges under N.Y. Workers' Compensation Law § 120 (McKinney 1982), the New York Courts have looked only to the final absence which "triggered" the discharge and finding that it was work related affirmed the Board's finding. See Lo Dolce, supra; Griffin v. Eastman Kodak Co., Inc. 80 A.D.2d 689, 436 N.Y.S.2d 441 (S.Ct. 1981). These decisions which permitted an expansive interpretation of N.Y. Workmen's Compensation Law § 120 have been criticized by the author of the "Practice Commentary" which annotates the statute as a result beyond the contemplation of the legislature which enacted it. § 120 at 55. Here, the employee can not point to a particular "instance" which triggered the discharge but must attack a neutral policy which classifies his absences as excessive. The fact that a substantial number of those absences were attributable to a work related injury does not prove a discriminatory discharge on the part of his supervisors, or that the employer's absence control policy contravenes public policy.
Of course, if an employee were fired after one instance of a work related injury, such an eventuality would smack more of a retaliatory response by the employer and could no doubt be dealt with in the litigation context already carved out in the Lally case. As the instances of absence begin to multiply, the likelihood of evidence supporting a retaliatory firing may begin to dissipate substantially. There will be cases where the line *412 between a retaliatory and non-retaliatory firing will not be bright and clear. In those instances summary relief may not be an appropriate vehicle to dispose of the case. In that event, the proceeding may result in a full blown trial where the credibility of the parties can be assessed and gauged by the fact finder. Until the legislature requires, as a matter of policy, that absences related to on the job injuries must be recognized as excused lost time, the employee is left to pursuing the remedy of showing that he is the victim of a retaliatory dismissal.
The employer's motion for summary judgment dismissing the employee's complaint is granted and the employee's cross motion for partial summary judgment finding that his discharge was wrongful is denied.
NOTES
[1] The employee contends that the absence control policy had an effective date of January 1, 1981, subsequent to the date of the work related injury. For purposes of this motion, the court accepts the effective commencement date of the policy as being January 1, 1981. There is, of course, no contention that this policy was designed and implemented to single out this particular employee.