760 A.2d 833 (2000)
334 N.J. Super. 669
Michael MALONE, Plaintiffs,
v.
ARAMARK SERVICES, INC., Defendants.
Superior Court of New Jersey, Law Division, Middlesex County.
Decided March 8, 2000.
*834 Shaun R. Simon, Morristown, for plaintiffs (Ravin Sarasohn Cook Baumgarten Fisch & Rosen, attorneys, Short Hills).
Richard M. DeAgazio, Short Hills, for defendants (Budd Larner Gross Rosenbaum Greenberg & Sade, attorneys).
CHAMBERS, P.J.S.C.
This lawsuit is a wrongful termination case arising out of the employment of Michael Malone with the defendant Aramark Services, Inc. (improperly pleaded as Aramark Corporation in the complaint). Malone, a long time employee of the defendant, was out of work due to a work related injury for a period of over a year. When he attempted to return to work, he was advised that his position had been filled and that no other position was available to him. As a result, he was discharged. *835 Independent of any rights he may have under the New Jersey Law Against Discrimination, the New Jersey Workers Compensation Law, and the federal Family and Medical Leave Act, plaintiff has moved to amend the complaint to add a separate and distinct cause of action for breach of a duty to hold Malone's job open him while he was out of work due to the work-related medical problem. The motion is denied, because no such cause of action exists under New Jersey law.
The factual background for this lawsuit is as follows. Defendant is in the business of providing food and cafeteria services to businesses, schools, hospitals and other facilities. Malone was the sole chef working at defendant's refinery account in Linden, New Jersey. This location is a small one for the defendant, serving 200 to 400 people, and Malone was the only chef working there, with no assistant chef or cook.
In December, 1994, Malone was placed on medical leave due to a work-related back injury, and he was unable to return to work until January 3, 1996, over a year later. In connection with the injury, he had back surgery in March, 1995 and knee surgery in June, 1995. He was out of work from December, 1994 to June, 1995 on accumulated 130 sick days. He was then out on unpaid medical leave from June, 1995 to September, 1995 and on additional unpaid medical leave from October 1, 1995 to December 9, 1995. During this time, defendant was provided with a series of doctor's notes which did not indicate with certainty when the plaintiff would be returning to work. (The note of April 19, 1995 indicated his estimated return to work date was July 1, 1995; the May 24, 1995 note stated he would return no earlier than July 1, 1995; the November 22, 1995 note said at least two more weeks pending a functional capacity evaluation; and, finally, the December 18, 1995 note indicated a January 3, 1996 return to work date.) On January 3, 1996, over a year after Malone left his job for medical reasons, he asked to return to work. At that time, he was advised that his position had been filled and, that no other comparable position was available. Accordingly, he was terminated.
This lawsuit has been filed by the administratrix for the Estate of Michael Malone (Malone died of causes unrelated to this litigation), alleging violations of the New Jersey Law Against Discrimination, asserting a Woolley claim under Woolley v. Hoffmann-LaRoche, 99 N.J. 284, 491 A.2d 1257, as modified, 101 N.J. 10, 499 A.2d 515 (1985), and claiming wrongful retaliation in violation of the workers' compensation law. N.J.S.A. 34:15-1 to N.J.S.A. 34:15-28.1.
In addition to these claims, plaintiff is now seeking to add a claim for breach of a duty to hold a job open for a person out of work due to a medical condition. In the proposed amended complaint, plaintiff asserts that defendant had a "duty to keep Michael Malone's job with them open and/or available for him, so that Michael Malone could return to work when his injuries abated sufficiently to allow him to return to work or when it was otherwise appropriate for him to return to work."
Rule 4:9-1 provides that leave to amend a pleading must be "given freely in the interest of justice." Accordingly, a motion to amend must be treated with liberality and without consideration of the ultimate merits of the amendment. See Kernan v. One Washington Park, 154 N.J. 437, 456-457, 713 A.2d 411 (N.J.1998). However, a trial court may appropriately deny leave to amend if the newly asserted claim is not one sustainable as a matter of law. See Interchange State Bank v. Rinaldi, 303 N.J.Super. 239, 257, 696 A.2d 744 (App.Div.1997).
The claim plaintiff is seeking to add to the complaint is not one recognized by New Jersey law nor does it make sense to create such a new cause of action. The plaintiff argues that New Jersey's public policy requires an employer to keep an injured employee's job open while the *836 employee is recuperating from an injury, particularly where the injury is work-related. The plaintiff points to the New Jersey Law Against Discrimination, New Jersey Temporary Disability Law and the retaliatory prohibitions in the New Jersey Workers' Compensation Act. Certainly, all of these statutes provide particular protections to workers injured in the work place, and one can correctly say that it is the public policy of the State to provide workers the protections afforded in these statutes. However, plaintiff is seeking broader protections independent of the ones provided by these statutes, relying on the case of Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 417 A.2d 505 (1980). That case holds that an at will employee may not be terminated if the termination is contrary to a clear mandate of public policy. The employee must be able to identify a specific expression of public policy that is being violated. Id. at 72, 417 A.2d 505. While the public policy of New Jersey does accord injured workers significant protections and benefits, it does not accord them the breadth of job protection that the plaintiff is seeking here.
Under New Jersey law, an employee at will, such as Malone, can be discharged from employment for any reason whatsoever, with certain specified exceptions. With respect to an employee injured on the job as Malone was, the law accords that employee certain benefits and exceptions to the employee at will doctrine. For example, an employee may have certain contractual benefits that preserve his job while he is out on sick leave, either in accordance with a collective bargaining agreement or an employment contract. In addition, company policy may preserve an employee's job for him while he is out on sick leave under an implied contract theory as set forth in Woolley v. Hoffmann-LaRoche, supra. Indeed, one of the claims plaintiff is making in this case is a claim for benefits under a Woolley theory.
Federal law provides injured workers with additional job protections when out of work due to a work related injury under federal law. Under the federal Family and Medical Leave Act, 29 U.S.C.A. 2601 et seq., an employee, such as Malone is allowed up to twelve weeks of leave due to an illness and may not be fired because of the inability to work during that time period. The New Jersey Family Leave Act, N.J.S.A. 34:11B-1 to 34:11B-16, is inapplicable since it provides a leave for care of injured or ill family members but does not deal with leaves due to the worker's illness. The New Jersey Temporary Disabilities Law is also inapplicable, since it provides benefits to disabilities that are not work-related or not covered by the workers compensation law N.J.S.A. 43:21-29.
Injured workers also have the protections afforded them under the laws prohibiting discrimination against the handicapped, namely the American Disabilities Act and the New Jersey Law Against Discrimination. Under the American Disabilities Act, a leave of absence from work in order to recuperate or receive treatment may be a reasonable accommodation. See, e.g., Criado v. IBM, 145 F.3d 437, 443 (1 Cir.1998). The extent of the leave will depend on the facts of case. Ibid. However, such a leave may not be indefinite or for an extended period of time. Ibid. There is no blanket requirement that leaves be granted to such an extent that the employee will not be able to perform the job's essential functions. Walton v. Mental Health Ass'n, 168 F.3d 661, 671 (3 Cir.1999). Where leaves of absence were in excess of one year, courts have found the employees incapable of performing their essential job function. Micari v. Trans World Airlines, Inc., 43 F.Supp.2d 275, 281 (E.D.N.Y.1999). Under the New Jersey Law Against Discrimination, excessive absenteeism need not be accommodated even if it is caused by a disability otherwise protected by the Act. Svarnas v. AT & T Communications, 326 *837 N.J.Super. 59, 740 A.2d 662 (App.Div. 1999).
In the proposed cause of action which the plaintiff is seeking to assert, an employee would be entitled to an indefinite leave, a leave for as long as it takes to recover from the injury. This is a much broader right than that afforded under the laws prohibiting discrimination against the handicapped.
An employee injured on the job is entitled to workers compensation benefits. The New Jersey Workers Compensation Law N.J.S.A. 34:15-1, supra, provides employees with certain payments and medical care for work related injuries. An employer is prohibited from retaliation against a worker who seeks workers compensation benefits. N.J.S.A. 34:15-39.1. Retaliation in violation of the statute gives rise to a common law claim by the aggrieved worker for compensatory and punitive damages. Lally v. Copygraphics, 173 N.J.Super. 162, 413 A.2d 960 (App.Div. 1980), aff'd 85 N.J. 668, 428 A.2d 1317 (1981). Accordingly, Malone has a viable cause of action against his employer if the employer retaliated against him by terminating his employment because Malone was seeking or obtained workers compensation benefits. Indeed, Malone has already filed such a claim. Thus, an amendment for that cause of action is not before this court.
Plaintiff is seeking more expansive job security for injured workers than offered by workers compensation law. Plaintiff maintains that as a matter of public policy the employer had a duty to hold his job open until Malone was able to return to work. In other words, plaintiff argues that, even if no retaliation occurred, the public policy behind the workers compensation law requires that the job be held open until the worker has recovered from the work related injury.
This argument, however, has previously been rejected by New Jersey courts. In Galante v. Sandoz, 192 N.J.Super. 403, 470 A.2d 45 (Law Div.1983), aff'd 196 N.J.Super. 568, 483 A.2d 829 (App.Div.1984), the plaintiff was terminated because he had accumulated absences in excess of those allowed by the employer. In that case, seventy-five percent of the employee's absences were attributable to a work-related injury. While plaintiff could not prove retaliation in violation of the workers' compensation statute, he maintained that terminating a worker due to absences caused by work related injuries violated the public policy behind the Worker's Compensation Law. supra. The court disagreed, finding that the Workers Compensation Law is insurance, providing compensation for losses without proof of fault. Id. at 408-409, 470 A.2d 45. It does not entitle workers to have their jobs held for them until they recuperate from work related injuries. Ibid.
It would be completely inappropriate in this instance for a court to further encroach into this sensitive area without a clear expression by the legislature. Thus, to expand the breadth of this statute, as the employee would have us do, to preclude the neutral application of an absence control policy by an employer to an employee who was once injured in a work related accident is to confer upon the employee a benefit not contemplated by the legislature; namely unlimited absences from work with impunity.
Id. at 409, 470 A.2d 45.
The holding in Galante v. Sandoz is consistent with the majority view in subsequent case law throughout the country. See Finnerty v. Personnel Board of City of Chicago, 303 Ill. App.3d 1, 303 Ill.App.3d 1, 236 Ill.Dec. 473, 707 N.E.2d 600 (1999) (an employer may fire an employee in Illinois for excessive absenteeism, even if the absenteeism is caused by a compensable injury); Weinzetl v. Ruan Single Source Transportation, Co., 587 N.W.2d 809 (Iowa Ct.App.1998) (termination of employment due to absenteeism caused by a work-related injury did not violate Iowa public policy); Barker v. Dayton Walther Corporation, 56 Ohio App.3d 1, 564 N.E.2d 738 (1989)(company policy that discharged all employees unable to work for six *838 months, whether due to a work-related or non work-related injury, did not violate Ohio public policy); Pierce v.. Franklin Electric Co., 737 P.2d 921, 925, (Okla.1987) (Oklahoma Workers Compensation Act, prohibiting retaliation against a worker who seeks workers compensation benefits, does not guarantee continued employment for the injured worker while recovering from the injury; the worker may be terminated due to absence from work; and, in so holding, the court noted that an "employer must operate economically and should be allowed to purchase the services his business requires.") Horn v. Davis Electrical Constructors, Inc., 307 S.C. 559, 416 S.E.2d 634 (1992)(South Carolina's workers' compensation statute does not give a worker a right to a reasonable period of time for rehabilitation after a work-related injury); Anderson v. Standard Register Co., 857 S.W.2d 555 (Tenn. 1993) (Tennessee has a clear public policy protecting employees from termination for asserting a workers' compensation claim; here, however, an employee out on a work-related injury may be terminated where there is no connection between the claim for workers' compensation benefits and termination).
A case widely cited for this majority view is Duncan v. New York State Developmental Center, 63 N.Y.2d 128, 481 N.Y.S.2d 22, 470 N.E.2d 820 (1984). New York State also has a statute prohibiting discrimination against an employee who makes a workers' compensation claim. To violate the act, there must be a causal connection between the claim for workers' compensation benefits and the employer's conduct. See id. at 134, 481 N.Y.S.2d 22, 470 N.E.2d 820. As a result, in the absence of evidence of retaliation, an employee could be discharged due to a lengthy absence caused by a work related injury without violating the workers' compensation law. A neutral employment policy applied to all employees does not violate the act, particularly where it is based on a legitimate business interest. See Id. The court explained the problems in permitting an employee to hold a position for an extended period of time, despite the employee's inability to perform the job due to an injury, writing:
An employer should be permitted to take reasonable steps to secure a steady, reliable, and adequate work force.... `The absence of a public employee from his position for a prolonged period unduly impairs the efficiency of an office or agency. In many cases, the duties of the absent employee must be absorbed by the remaining staff because temporary replacements are difficult to obtain. Continued performance of the business of government necessitates that there be a point at which the disabled officer may be replaced.' These concerns are not diminished by the circumstances that the employee was injured on the job, rather than off. To forbid absolutely any detrimental treatment of an injured worker would transform section 120 into a job security clause, which is contrary to the Legislature's intent....
Id. at 135, 481 N.Y.S.2d 22, 470 N.E.2d 820 (citations omitted).
While the Duncan case dealt with a public employee, the reasoning applies to the private sector as well. See Weinzetl v. Ruan Single Source Transportation, supra.
Rejecting the majority view, one state has found that the right to time off from work to recover from a work related injury is implicit in its workers' compensation act. Lindsay v. Great Northern Paper Co., 532 A.2d 151 (Me.1987). However, in that case there was a strong dissent relying on the Duncan case. While language in Coleman v. Safeway Stores, Inc., 242 Kan. 804, 752 P.2d 645 (Kan.1988) suggested that Kansas may also provide this broad protection to workers, that interpretation has been rejected by subsequent courts looking at Kansas law. See, e.g., Ramirez v. IBP, Inc., 913 F.Supp. 1421, 1436 (D.Kan. 1995). Similarly, in the California case of Judson Steel Corp. v. Workers Comp. Appeals Bd., 22 Cal.3d 658, 150 Cal.Rptr. 250, *839 586 P.2d 564 (1978), an employee with a work-related injury was terminated after an absence of more than one year. The termination was found to be retaliation in violation of the workers compensation act because other workers in similar circumstances had been given extensions beyond the year. As the dissent states, the court found retaliation even though there was no evidence that the employer did so in retaliation for assertion of the workers' compensation claim. Id. at 671, 150 Cal.Rptr. 250, 586 P.2d 564. However, even in that case, the California court did not recognize a right to have a job held open for the employee while recuperating from a work-related injury. The court said; "we emphasize that our present holding in no way mandates that an employer retain all employees who sustain injuries on the job." Id. at 667, 150 Cal.Rptr. 250, 586 P.2d 564.
Thus, the majority view is that an employer need not hold an employee's job open for as long as it takes the employee to recover from a work related injury. Accordingly, there is no clear mandate of public policy supporting plaintiff's Pierce claims.
Requiring a job to be held open until the employee recovers is not always practicable. Unfortunately, it may take many months, or even a year or more for a worker to recover from the injury sufficient to be able to return to work. (In one reported decision, an employee, who had been injured on his third day on the job, claimed retaliatory discharge in violation of the workers' compensation statute after being out of work for four years. The New York courts sensibly rejected the claim. Conklin v. City of Newburgh, 205 A.D.2d 841, 613 N.Y.S.2d 287 (N.Y.App.Div.1994).) In the meantime the job still has to get done, and the workplace still must function.
The majority rule makes sense. While, the laws prohibiting discrimination against the handicapped require that some reasonable accommodation must be made to an injured worker, at a certain point holding a job open for an extensive or indeterminate period of time becomes unreasonable. Having a worker out on extended leave in many circumstances puts significant pressure on other workers in the work place and management, which either must absorb the work within the workforce present or obtain and train temporary help. Where there is uncertainty about whether an injured the employee will ever return to work, the temporary worker either lives with the insecurity that he or she will lose the job once the employee returns to work, or will seek other more secure employment, leaving management once again in the position of having to obtain and train further temporary help. In addition, it is not unusual at any particular time for more than one worker to be out on leave for a work-related injury. Over time, others may receive work-related injuries requiring their absences from the workplace for lengthy or indeterminate periods of time. When this situation occurs not once, but multiple times in the work place, it becomes more untenable and difficult for the remaining workers and management to accommodate a rule requiring that a job be held open indefinitely for a worker to recover from a work-related injury.
Current law does provide substantial protection and benefits to injured workers. The workers' compensation statute provides employees with compensation for any work-related injuries. It provides for payment of their medical bills and provides financial compensation for the injuries sustained in a work-related accident regardless of fault. Employers may not retaliate against workers seeking these benefits. The federal Family and Medical Leave Act, 29 U.S.C.A. § 2601, et seq., gives qualified workers a leave of up to 12 weeks for an illness, including a work related injury. The laws prohibiting discrimination against the handicapped provide all employees, whether suffering from a work-related injury or a non-work related injury, rights to reasonable accommodations *840 for their injuries, which may include a limited leave. In addition to these benefits, an employee may have certain contractual benefits and rights to a leave of absence from work under a collective bargaining agreement or an employment contract. In addition, under a Woolley theory, company policy may provide an employee with a leave of absence from work.
For all of these reasons, public policy does not require that an employee's job be held open for the employee for as long as it takes for the employee to recover from a work related injury. Plaintiff's motion to amend the complaint to assert this novel cause of action is denied.