NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2526-15T4

CARL E. LARSON,

 Plaintiff-Appellant,

v.

CITY OF PATERSON, a Corporate
Body Politic of the State of
New Jersey,

 Defendant-Respondent.
________________________________

 Argued September 18, 2017 – Decided October 26, 2017

 Before Judges Messano and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Passaic County, Docket
 No. L-4092-13.

 Edward J. Nolan argued the cause for
 appellant.

 Jeffrey A. Kopco argued the cause for
 respondent (Gordon & Rees, LLP, attorneys;
 Elizabeth F. Lorell and Mr. Kopco, of counsel
 and on the brief).

PER CURIAM

 Plaintiff Carl E. Larson, a firefighter formerly employed by

defendant City of Paterson, appeals from an order granting summary
judgment to defendant and dismissing his complaint alleging

retaliatory discharge for filing workers' compensation claims and

age discrimination in violation of the New Jersey Law Against

Discrimination (LAD), N.J.S.A. 10:5-1 to -42. Based on our review

of the record under the applicable law, we affirm the dismissal

of plaintiff's LAD claim, reverse the dismissal of his retaliatory

discharge claim and remand for further proceedings.

 I.

 In our review of the record before the trial court, we accept

the facts and all reasonable inferences therefrom in the light

most favorable to plaintiff because he is the party against whom

summary judgment was entered. Brill v. Guardian Life Ins. Co. of

Am., 142 N.J. 520, 540 (1995). Applying that standard, the record

before the trial court established the following facts.1

1
 We are not persuaded by defendant's contention that there are no
material facts in dispute because plaintiff's opposition to
defendant's statement of material facts was unsupported by
citations to the motion record. See R. 4:46-2(b). Although
plaintiff's responses to each of defendant's separate statements
of material fact did not include citations to the record,
plaintiff's opposition was supported by an affidavit submitted in
accordance with Rule 4:46-5(a), and included a counterstatement
of material facts supported by citations to the motion record. See
ibid. We accept plaintiff's version of the facts and all
reasonable inferences that can be reasonably drawn from them in
our consideration of the motion court's granting of defendant's
summary judgment motion.

 2 A-2526-15T4
 Plaintiff was employed by Paterson as a firefighter from 1987

until 2013. From 2007 through the termination of his employment

in 2013, he held the title of a fire captain.

 In 2010 and 2011, plaintiff filed for workers' compensation

benefits for separate work-related injuries, but continued working

until February 2013.

 In 2008, plaintiff underwent a surgical procedure for a work-

related neck injury. Following one month of recuperation, in

December 2008, plaintiff was medically cleared to return to work

and resumed his full-time work duties.

 In March 2010, plaintiff sustained ligament damage to his

left ankle while exiting a fire truck. Two months later, he

returned to work without any medical restrictions.

 Plaintiff filed workers' compensation claims related to his

neck and ankle injuries in 2010 and 2011, respectively. At a

February 13, 2013 meeting, the Paterson City Council adopted a

resolution authorizing a settlement of plaintiff's workers'

compensation claims for $105,876. Fire Chief Michael Postorino

and Fire Director Glenn Brown attended the city council meeting.2

2
 The settlement was approved by the workers' compensation court
on April 2, 2013.

 3 A-2526-15T4
 During the weeks following defendant's approval of the

workers' compensation claims, plaintiff missed two workdays due

to a non-work related back injury. While at home, he received a

call from Deputy Chief Bruce Vandervoort, who informed plaintiff

he needed to speak with Captain Michael Trommelon regarding a

fitness-for-duty physical examination. Plaintiff immediately

advised Trommelon he was ready for the physical. In response,

Trommelon explained that Postorino said plaintiff was to remain

off-duty. Trommelon told plaintiff to call back in a couple days.

 A few days later, plaintiff again informed Trommelon he was

ready for his fitness-for-duty physical. Trommelon told plaintiff

that Postorino said plaintiff should remain off-duty until

plaintiff heard from him.

 Plaintiff then spoke with his union representative, Captain

Michael Caposella, who said that due to the amount of plaintiff's

compensation award and his medical report defendant was "looking

to terminate [plaintiff]." Caposella advised plaintiff to arrange

a meeting with Postorino.

 In mid-March 2013, plaintiff met with Postorino, Deputy Chief

Kevin Hancock, and Caposella. Postorino first asked plaintiff if

he was wearing a recording device and plaintiff said he was not.

Postorino said that if plaintiff was wearing a recording device,

the meeting was over. Postorino then directly addressed

 4 A-2526-15T4
plaintiff's workers' compensation claim. Postorino said that due

to plaintiff's compensation award and his medical reports, "the

legal department felt [plaintiff] was a liability and therefore

decided to terminate [him]." He also told plaintiff that the

"city council thought [plaintiff] was so disabled or [plaintiff]

worked with [his] doctors to defraud the city."

 Plaintiff explained that he did not want to retire, and

Postorino said, "Well, if you are telling me you are not disabled

and you come back to work you are suspended without pay."

Postorino also said that if plaintiff fought defendant's decision,

plaintiff could go one or two years without a paycheck, and spend

$200 an hour on attorney's fees. Postorino explained that if

plaintiff retired effective April 1, Postorino would keep

plaintiff on administrative leave, but that if the retirement was

delayed until May 1, plaintiff would be required to use

administrative leave days thereby adversely affecting his terminal

leave payment of $10,000.

 Plaintiff was forty-nine years of age and felt he had "no

choice" but to retire because he would have been suspended without

pay if he failed to do so. Postorino never said plaintiff was too

old to continue working as a firefighter. Plaintiff submitted his

retirement application the following day.

 5 A-2526-15T4
 Plaintiff filed a complaint alleging defendant forced him to

retire in retaliation for his assertion of his rights under the

Workers' Compensation Act, N.J.S.A. 34:15-1 to -142, (count one),

and because of his age in violation of the LAD (count two).3 After

the close of discovery, the court granted defendant's motion for

summary judgment and dismissed the complaint with prejudice.

 In a written opinion, the court first found plaintiff's

retaliatory discharge claim was barred under N.J.S.A. 10:5-27

because plaintiff sought a remedy available under the LAD. The

court further found it lacked jurisdiction over plaintiff's age

discrimination claim because N.J.S.A. 10:5-12.1 requires that

forced retirement claims be filed exclusively with the Attorney

General.4 The court further determined that even if it had

3
 Plaintiff's complaint also asserted causes of action for aiding
and abetting discrimination in violation of the LAD (count three)
and tortious interference with his employment rights (count four).
Plaintiff did not oppose the dismissal of those claims in response
to defendant's summary judgment motion, and does not challenge the
dismissal of the claims on appeal. We therefore do not address
those claims here.
4
 Claims that are subject to the requirements of N.J.S.A. 10:5-
12.1 must be filed with the "Attorney General under the provisions
of" N.J.S.A. 10:5-1. The Director of the New Jersey Division on
Civil Rights acts for the Attorney General and receives,
investigates and conducts hearings on complaints alleging LAD
violations. N.J.S.A. 10:5-8(d), (g); Passaic Daily News v. Blair,
63 N.J. 474, 483-84 (1973).

 6 A-2526-15T4
jurisdiction and plaintiff's claims5 were not otherwise barred,

plaintiff failed to sustain his burden of showing he suffered an

adverse employment action or was discharged. The court found

there was insufficient evidence showing plaintiff was forced to

retire and that defendant instituted proceedings to terminate

plaintiff's employment.

 The court entered an order granting defendant's motion for

summary judgment and dismissing the complaint. This appeal

followed.

 II.

 We review a trial court's grant of summary judgment de novo.

Cypress Point Condo. Ass'n v. Adria Towers, L.L.C., 226 N.J. 403,

414 (2016). Summary judgment is appropriate where there is no

genuine issue of material fact and the moving party is entitled

to judgment as a matter of law. R. 4:46-2(c). We must "consider

whether the competent evidential materials presented, when viewed

in the light most favorable to the non-moving party in

consideration of the applicable evidentiary standard, are

5
 It is unclear whether the court's finding that plaintiff failed
to present evidence he was forced to retire is limited to its
analysis of plaintiff's age discrimination claim. Although the
court's discussion of the issue does not include an express
reference to plaintiff's retaliatory discharge claim, we broadly
read the court's opinion to apply to plaintiff's retaliatory
discharge claim as well.

 7 A-2526-15T4
sufficient to permit a rational factfinder to resolve the alleged

disputed issue in favor of the non-moving party." Brill, supra,

142 N.J. at 523.

 In his complaint, plaintiff alleges defendant forced him to

retire in retaliation for his filing of the 2010 and 2011 workers'

compensation claims that were resolved in February 2013. The

court granted defendant's motion for summary judgment and

dismissed the claim for three reasons. First, the court determined

it lacked jurisdiction to adjudicate plaintiff's retaliatory

discharge claim under N.J.S.A. 10:5-12.1. Second, the court also

concluded plaintiff's common law retaliatory discharge claim was

preempted by the LAD. Third, the court found that even it had

jurisdiction and the claim was not preempted by the LAD, plaintiff

failed to demonstrate that he suffered an adverse employment

action. We address the court's findings in turn.

 A. Jurisdiction

 N.J.S.A. 10:5-12.1 states:

 Notwithstanding any provision of law to the
 contrary, relief for having been required to
 retire in violation of the provisions of
 [N.J.S.A. 10:5-12], shall be available to the
 person aggrieved by that violation solely
 through the procedure initiated by filing a
 complaint with the Attorney General under the
 provisions of [the LAD].

 Notwithstanding any provision to the contrary
 of [N.J.S.A. 10:5-17] or any other law, relief

 8 A-2526-15T4
 ordered for or granted to a person in
 connection with his being required to retire
 in violation of the provisions of [N.J.S.A.
 10:5-12] shall be limited to his reinstatement
 with back pay and interest.

 [N.J.S.A. 10:5-12.1 (emphasis added).]

 The court dismissed plaintiff's retaliatory discharge claim

under N.J.S.A. 10:5-12.1 finding it lacked jurisdiction. The

court reasoned that N.J.S.A. 10:5-12.1 permitted the assertion of

a "required to retire" claim only "by filing a complaint with the

Attorney General under the provisions of" the LAD. The court

concluded the exclusive forum for plaintiff's retaliatory

discharge claim was with the Attorney General. We disagree.

 The court erred in its application of N.J.S.A. 10:5-12.1

because, by its express terms, the statute applies only to claims

where an employee is "required to retire in violation of the

provision of [N.J.S.A. 10:5-12]." Plaintiff's retaliatory

discharge claim, however, is not based on an alleged violation of

N.J.S.A. 10:5-12, and the statute does not prohibit discrimination

or retaliation against an employee for asserting rights to workers'

compensation benefits.6 Plaintiff alleges he was forced to retire

6
 N.J.S.A. 10:5-12 prohibits employment discrimination

 because of the race, creed, color, national
 origin, ancestry, age, marital status, civil
 union status, domestic partnership status,

 9 A-2526-15T4
in retaliation for his assertion of rights under the Workers'

Compensation Act, N.J.S.A. 34:15-1 to -142.

 Plaintiff asserted a well-established common law cause of

action unrelated to the LAD. In Lally v. Copygraphics, 85 N.J.

668, 677 (1981), the Court considered N.J.S.A. 34:15-39.1, which

prohibits an employer from "discharg[ing] or in any other manner

discriminat[ing] against an employee as to his employment because

such employee has claimed or attempted to claim workmen's

compensation benefits from such employer . . . ." The Court held

"there exists a common law cause of action for civil redress for

a retaliatory firing" under N.J.S.A. 34:15-39.1 for employees who

are discriminated against or discharged for claiming or attempting

to claim workers' compensation benefits. Id. at 670.

 Plaintiff asserted a Lally common law cause of action for

retaliatory discharge here. N.J.S.A. 10:5-12.1 did not deprive

the court of jurisdiction because the claim is not based on an

 affectional or sexual orientation, genetic
 information, pregnancy, sex, gender identity
 or expression, disability or atypical
 hereditary cellular or blood trait of any
 individual, or because of the liability for
 service in the Armed Forces of the United
 States or the nationality of any individual,
 or because of the refusal to submit to a
 genetic test or make available the results of
 a genetic test to an employer . . . .

 10 A-2526-15T4
alleged violation of N.J.S.A. 10:5-12. The court erred in

concluding otherwise.

 B. Preemption

 The court also erred by finding that plaintiff's common law

retaliatory discharge claim was preempted by the LAD. The court

concluded the cause of action sought a "remedy available under"

the LAD and was therefore preempted under the LAD's exclusivity

provision, N.J.S.A. 10:5-27, which provides that:

 The provisions of [the LAD] shall be construed
 fairly and justly with due regard to the
 interests of all parties. Nothing contained
 in this act shall be deemed to repeal . . .
 any other law of this State relating to
 discrimination . . . except that, as to
 practices and acts declared unlawful by
 [N.J.S.A. 10:5-12] of this act, the procedure
 herein provided shall, while pending, be
 exclusive; and the final determination therein
 shall exclude any other action, civil or
 criminal, based on the same grievance of the
 individual concerned.

 [N.J.S.A. 10:5-27.]

 In making its determination, the court did not consider the

nature of plaintiff's claim and the requirements of the LAD. To

be sure, the LAD preempts common law claims "when a statutory

remedy under the LAD exists." Catalane v. Gilian Instrument Corp.,

271 N.J. Super. 476, 492 (App. Div. 1994). For example, in

Catalane, we found "the plaintiff's common law claim that he was

 11 A-2526-15T4
terminated because of his age in violation of public policy" should

have been dismissed because it was preempted by the LAD. Ibid.

 The LAD is "intended to increase the choice of remedies for

victims of discrimination." Wilson v. Wal-Mart Stores, 158 N.J.

263, 270-71 (1999). Its exclusivity provision, N.J.S.A. 10:5-27,

"basically seeks to prevent parties from having a 'second bite at

the apple' by pursuing the alternative route to relief." Id. at

271 (citation omitted). "It seeks to prevent duplication of

efforts and forum shopping." Ibid.

 "The LAD does not 'bar, exclude or otherwise affect any right

or action, civil or criminal, which may exist independently of any

right to redress against or specific relief from any unlawful

employment practice or unlawful discrimination.'" Dale v. Boy

Scouts of Am., 308 N.J. Super. 516, 542 (App. Div. 1998) (quoting

N.J.S.A. 10:5-27), aff'd, 160 N.J. 562 (1999), rev'd on other

grounds, 530 U.S. 640, 120 S. Ct. 2446, 147 L. Ed. 2d 554 (2000).

"[A]ll remedies available in common law tort actions [are]

available to prevailing plaintiffs. These remedies are in addition

to any provided by [the LAD] or any other statute." Ibid.

(quoting N.J.S.A. 10:5-13). The LAD does not preempt actions "to

vindicate particular interests in addition to or aside from those

sought to be protected by a LAD action," such as common law claims

for discharge in retaliation for filing workers' compensations

 12 A-2526-15T4
claims under Lally. Shaner v. Horizon Bancorp, 116 N.J. 433, 454

(1989).

 Here, plaintiff has not asserted a common law cause of action

for discrimination in employment and does seek a remedy existing

under the LAD. See Catalane, supra, 271 N.J. Super. at 492.

Plaintiff asserts a common law claim based on an alleged violation

of N.J.S.A. 34:15-39.1, not the LAD. The court therefore erred

in finding the retaliatory discharge claim is preempted by the

LAD, and by granting defendant's motion for summary judgment

dismissing the claim on that basis. Shaner, supra, 116 N.J. at

454; Dale, supra, 308 N.J. Super. at 542.

 C. Adverse Employment Action

 The court also addressed the merits of the retaliatory

discharge claim, finding that even if it had jurisdiction and the

claim was not preempted by the LAD, there were no disputed issues

of material fact and plaintiff failed to present evidence

sufficient to support the claim as a matter of law. Based on our

review of the record, we are convinced the court erred in its

assessment of the evidence and incorrectly based its conclusion

on disputed issues of material fact.

 In determining whether there is a genuine issue of material

fact precluding the grant of summary judgment, a court must

consider "whether the competent evidential materials presented,

 13 A-2526-15T4
when viewed in the light most favorable to the non-moving party,

are sufficient to permit a rational factfinder to resolve the

alleged disputed issue in favor of the non-moving party." Brill,

supra, 142 N.J. at 540. Although we do not owe the motion court's

conclusions any deference, Nicholas v. Mynster, 213 N.J. 463, 478

(2013), we should affirm a judgment if we determine the motion

court's conclusions of law were correct. Henry v. N.J. Dept. of

Human Servs., 204 N.J. 320, 330 (2010).

 It is not the court's function to "weigh the evidence and

determine the outcome" based on contested factual evidence

presented by the parties. Gilhooley v. Cnty. of Union, 164 N.J.

533, 545 (2000) (citing Brill, supra, 142 N.J. at 540). It is the

jury's role to decide all genuine issues of material fact in

dispute between the parties. Parks v. Rogers, 176 N.J. 491, 502

(2003). A judge may "decide that a party should prevail as a

matter of law" only "when the evidence is utterly one-

sided . . . ." Gilhooley, supra, 164 N.J. at 545. Applying these

standards, we are satisfied that there were genuine issues of

material fact surrounding the termination of plaintiff's

employment and, therefore, the judge mistakenly granted

defendant's motion dismissing the retaliatory discharge cause of

action.

 14 A-2526-15T4
 To establish a prima facie case for retaliatory discharge for

claiming workers' compensation benefits, an employee must prove:

"(1) that he made or attempted to make a claim for workers'

compensation; and (2) that he was discharged in retaliation for

making that claim." Cerracchio v. Alden Leeds, Inc., 223 N.J.

Super. 435, 442-43 (App. Div. 1988) (quoting Galante v. Sandoz,

Inc., 192 N.J. Super. 403, 407 (Law Div. 1983), aff'd, 196 N.J.

Super. 568 (App. Div. 1984)). Here, there is no dispute plaintiff

made workers' compensation claims and his employment was

subsequently terminated. Thus, the issue presented on defendant's

motion for summary judgment was whether plaintiff presented

sufficient evidence showing he was discharged in retaliation for

making the workers' compensation claims.

 Plaintiff does not allege that defendant directly terminated

his employment. Instead, his complaint alleges defendant's

purported retaliatory actions compelled his decision to retire.

We read the complaint to allege that plaintiff was constructively

discharged. A constructive discharge occurs when an employer

engages in "severe or pervasive" conduct that is "so intolerable

. . . a reasonable person would be forced to resign rather than

continue to endure it." Shepherd v. Hunterdon Developmental Ctr.,

174 N.J. 1, 28 (2002) (quoting Jones v. Aluminum Shapes, Inc., 339

N.J. Super. 412, 428 (App. Div. 2001)). "[T]he standard envisions

 15 A-2526-15T4
a 'sense of outrageous, coercive and unconscionable

requirements.'" Ibid. (citation omitted). The heightened standard

demanded for proof of a constructive discharge claim recognizes

an employee's "obligation to do what is necessary and reasonable

to remain employed rather than" resign or retire. Ibid. (quoting

Shepherd v. Hunterdon Developmental Center, 336 N.J. Super. 395,

420 (App. Div. 2001), rev'd on other grounds, 174 N.J. 1 (2002)).

The proofs required to establish a constructive discharge are not

subjective in nature, but are instead objective, i.e. whether a

"reasonable person" would have resigned. See ibid.; see also

Muench v. Township of Haddon, 255 N.J. Super. 288, 302 (App. Div.

1992).

 Here the court did not directly assess plaintiff's claim

under the constructive discharge standard.7 Instead, the court

implicitly applied the standard because it concluded plaintiff was

not forced to retire and therefore was not subject to any adverse

employment action for filing his workers' compensation claims.

7
 We reject defendant's contention that plaintiff did not claim
before the motion court that he was constructively discharged.
Although plaintiff did not characterize the termination of his
employment as a "constructive discharge" before the motion court,
his complaint and his brief in opposition to defendant's summary
judgment motion assert that defendant's alleged retaliatory
actions forced him to retire. Those allegations constitute a
constructive discharge claim. See Shepherd, supra, 174 N.J. at 28.

 16 A-2526-15T4
 In our review of the record, we consider plaintiff's

retaliation claim to determine if there was evidence showing he

was constructively discharged sufficient to require submission of

the issue to the jury. Determining if an employee suffered a

"[c]onstructive discharge is a 'heavily fact-driven determination

. . . .'" Ibid.

 In Shepherd, the Court observed that in assessing whether an

employee claiming harassment was constructively discharged, a

"trial court should consider the nature of the harassment, the

closeness of the working relationship between the harasser and the

victim, whether the employee resorted to internal grievance

procedures, the responsiveness of the employer to the employee's

complaints, and all other relevant circumstances." Shepherd,

supra, 174 N.J. at 28 (quoting Shepherd, supra, 336 N.J. Super.

at 420). Other courts that have required to determine if an

employee's resignation was the result of a constructive discharge

have considered factors "including whether the employee was

threatened with discharge, encouraged to resign, demoted, subject

to reduced pay or benefits, involuntarily transferred to a less

desirable position, subject to altered job responsibilities, or

given unsatisfactory job evaluations." See, e.g., Mandel v. M&Q

Packaging Corp., 706 F.3d 157, 169-70 (3d Cir. 2013); accord

 17 A-2526-15T4
Colwell v. Rite Aid Corp., 602 F.3d 495, 502-503 (3d Cir. 2010);

see also Embirco v. U.S. Steel Corp., 404 F. Supp. 2d

802, 821-22 (E.D. Pa. 205) (finding evidence showing that employee

had been excluded from training, suffered an unexpected reduction

in his performance evaluation and supervisor's recommendation that

he accept an early retirement program was sufficient to support a

constructive discharge claim), aff'd, 245 Fed. App'x. 184 (3d Cir.

2007).

 Here, the motion court found plaintiff did not present

"evidence that he was forced to resign." The court further found

plaintiff's "mere statement" he was forced to resign "is not

probative in light of [his] request for retirement papers

and . . . Caposela's deposition testimony" that termination

proceedings under the union contract had not begun when plaintiff

retired. The court reasoned that because there was evidence

showing defendant could have taken action to challenge a

termination or suspension without pay, a rational fact-finder

could not conclude he was forced to retire.

 In making its findings, the court mistakenly failed to

consider all of the evidence, made credibility determinations, and

relied on disputed material facts. Contrary to the court's

finding, there was evidence plaintiff was forced to retire.

Plaintiff testified he was capable of performing his duties, and

 18 A-2526-15T4
he had been fully performing his duties for the five-year period

following his 2008 surgery and prior to the 2013 settlement of the

workers' compensation cases. He twice requested a fitness for

duty examination to demonstrate his ability to perform his duties

following the workers' compensation settlement. Nevertheless,

according to plaintiff, Postorino said defendant decided to

terminate plaintiff's employment because of plaintiff's workers'

compensation claims.

 According to plaintiff, Postorino also said that if plaintiff

was not disabled and returned to work, plaintiff would be

"suspended without pay." Postorino threatened that if plaintiff

fought the City's decision, plaintiff "could be out [of work] one

to two years without a paycheck" and paying "$200 an hour for

attorney's fees."

 Moreover, plaintiff testified Postorino said that if

plaintiff did not retire by April 1, 2013, Postorino would remove

plaintiff from administrative leave and force him to use

accumulated leave time. That action would been reduced plaintiff's

$10,000 terminal leave payment.

 Plaintiff testified that Postorino left him with "no choice"

because he had a family to support and bills to pay. Plaintiff

testified that in response to Postorino's statements and

threatened actions, he chose to retire.

 19 A-2526-15T4
 Postorino and other witnesses dispute plaintiff's version of

Postorino's statements and the other circumstances leading to

plaintiff's retirement. But the court was required to accept

plaintiff's version of the facts as true. Brill, supra, 142 N.J.

at 535. Instead, the court mistakenly discounted plaintiff's

version of the events and resolved the credibility disputes in

defendant's favor. See Rogers, supra, 176 N.J. at 503 (finding

summary judgment should be denied when resolution of material

issues of fact are dependent on credibility determinations).

 Based on our review of the record, and viewing the evidence

in the light most favorable to plaintiff, we are convinced a

reasonable trier of fact could conclude that plaintiff was

constructively discharged and forced to retire. The evidence

showed Postorino refused to permit plaintiff to take a fitness-

for-duty exam thereby foreclosing plaintiff's opportunity to

demonstrate that he was capable of performing his duties.

Postorino told plaintiff that defendant made a decision to

terminate his employment. Postorino further advised plaintiff

that if he attempted to return to work, he would be suspended

without pay as he pursued any legal remedies. Postorino also

encouraged plaintiff's retirement and discouraged plaintiff's if

he retired by April 1, 2013.

 20 A-2526-15T4
 By any objective measure, defendant presented plaintiff with

an objectively coercive and intolerable choice: retire or face

immediate termination or a suspension without pay. Postorino's

statements and threats to plaintiff created circumstances "so

intolerable that a reasonable person would be forced to resign

rather than continue to endure" them. Shepherd, supra, 174 N.J.

at 28.

 We are not persuaded by defendant's argument that plaintiff

was not constructively discharged because defendant did not

commence formal proceedings to effectuate his termination and

there were available means to challenge a suspension or

termination. We are mindful that an employee claiming a

constructive discharged must do "what is necessary and reasonable

in order to remain employed rather than simply quit." Shepherd,

supra, 174 N.J. at 28.

 But here, Postorino said the termination decision was already

made and, thus, there was nothing plaintiff could reasonably do

to remain employed rather than retire. Moreover, Postorino said

that if plaintiff attempted to continue to work, he would be

suspended without pay during the period any challenge to the

 21 A-2526-15T4
suspension was waged.8 Postorino threatened that if plaintiff

attempted to return to work he would be forced to live for years

without a paycheck. Therefore, it was defendant, through its Fire

Chief, that rendered recourse to any available means to challenge

a suspension a wholly unreasonable option for plaintiff. Under

all of the circumstances, we are convinced defendant did not

present plaintiff with any reasonable alternative to an immediate

retirement and thereby coerced him into doing so. The evidence

presented, therefore, was sufficient to permit a rational fact-

finder to conclude that plaintiff was constructively discharged.

 In sum, we conclude the court had jurisdiction over

plaintiff's retaliatory discharge claim, the claim is not

preempted by the LAD, and plaintiff presented sufficient evidence

showing he suffered an adverse employment action, a constructive

discharge, for submission of those issues to a jury. We reverse

the court's grant of summary judgment to defendant on count one

of the complaint.

8
 We observe that Postorino statements appear to conflict. He
told plaintiff that defendant decided to terminate his employment
and, on the other hand, said that if plaintiff attempted to return
to work he would be suspended without pay. Resolution of the
conflict is unnecessary. In our view, the conflicting statements,
when viewed in the light most favorable to plaintiff, support the
reasonable inference that Postorino made clear that plaintiff
would no longer be permitted to work for defendant and would not
receive any future pay from defendant.

 22 A-2526-15T4
 III.

 Plaintiff next challenges the court's dismissal of his cause

of action alleging he was forced to retire because of his age in

violation of the LAD. The court dismissed the claim finding that

it lacked jurisdiction over the claim under N.J.S.A. 10:5-21, and

that plaintiff failed to present any evidence showing defendant

forced plaintiff to retire because of his age. The court also

found plaintiff could not establish an age discrimination claim

because he did not suffer an adverse employment action.

 N.J.S.A. 10:5-12 prohibits employment discrimination based

on an employee's age. In pertinent part, N.J.S.A. 10:5-12 provides

as follows:

 It shall be an unlawful employment practice,
 or, as the case may be, an unlawful
 discrimination . . . [f]or an employer,
 because of the . . . age . . . of any
 individual . . . to refuse to hire or employ
 or to bar or to discharge or require to retire,
 unless justified by lawful considerations
 other than age, from employment such
 individual or to discriminate against such
 individual in compensation or in terms,
 conditions or privileges of employment.

 [See also N.J.S.A. 10:5-4.]

 "All LAD claims are evaluated in accordance with the United

States Supreme Court's burden-shifting mechanism" established in

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817,

 23 A-2526-15T4
36 L. Ed. 2d 668 (1973).9 Battaglia v. United Parcel Serv., Inc.,

214 N.J. 518, 546 (2013); accord Victor v. State, 203 N.J. 383,

408 (2010). A plaintiff claiming age discrimination must first

present evidence establishing a prima facie case of discrimination

by showing age played a determinative role in the adverse

employment action. Bergen Commer. Bank v. Sisler, 157 N.J. 188,

212-13 (1999). Upon plaintiff's demonstration of a prima facie

case, the burden shifts to the employer to articulate a legitimate

non-discriminatory reason for the adverse employment action. Id.

at 210-11.

 "In order to successfully assert a prima facie claim of age

discrimination under the LAD, plaintiff must show that: (1) [he]

was a member of a protected group; (2) [his] job performance met

the 'employer's legitimate expectations'; (3) [he] was terminated;

and (4) the employer replaced, or sought to replace, [him]." Nini

v. Mercer Cty. Cmty. Coll., 406 N.J. Super. 547, 554-58 (App. Div.

2009) (quoting Zive v. Stanley Roberts, Inc., 182 N.J. 436, 450

(2005)), aff'd, 202 N.J. 98 (2010). Satisfaction of the fourth

element "require[s] a showing that the plaintiff was replaced with

9
 In cases where there is direct evidence of discrimination, the
McDonnell Douglas burden-shifting analysis is not applicable. See
Smith v. Millville Rescue Squad, 225 N.J. 373, 394-96 (2016)
(explaining differing analyses required of discrimination claims
based on direct and circumstantial evidence). Plaintiff does not
offer any direct evidence of age discrimination here.

 24 A-2526-15T4
'a candidate sufficiently younger to permit an inference of age

discrimination,'" Sisler, supra, 157 N.J. at 213 (quoting Kelly

v. Bally's Grand, Inc., 285 N.J. Super. 422, 429 (App. Div. 1995)),

or that otherwise creates an inference of age discrimination,

Reynolds v. Palnut Co., 330 N.J. Super. 162, 168-69 (App. Div.

2000).

 A plaintiff must "show that the prohibited consideration

[,age,] played a role in the decision making process and that it

had a determinative influence on the outcome of that process."

Garnes v. Passaic Cty., 437 N.J. Super. 520, 530 (App. Div. 2014)

(quoting Bergen Commer. Bank, supra, 157 N.J. at 207). "Although

the discrimination must be intentional, an employee may attempt

to prove employment discrimination by using either direct or

circumstantial evidence." Ibid. (quoting Bergen Commer. Bank,

supra, 157 N.J. at 208).

 The court correctly dismissed plaintiff's age discrimination

claim because he failed to establish prima facie case of age

discrimination. The record is devoid of any evidence that he "was

replaced with 'a candidate sufficiently younger,'" Nini, supra,

406 N.J. Super. at 554, or that otherwise permits an inference of

age discrimination. Reynolds, supra, 330 N.J. Super. at 168-69.

In opposition to defendant's motion, plaintiff did not present any

evidence showing that his age played a role in any of defendant's

 25 A-2526-15T4
actions that caused him to retire. In contrast, plaintiff

presented evidence showing only that he was forced to retire in

retaliation for filing workers' compensation claims. We therefore

affirm the court's dismissal of plaintiff's age discrimination

claim.

 Because we are satisfied plaintiff failed to present any

evidence showing he was required to retire because of his age, it

is unnecessary to decide if the court correctly determined that

N.J.S.A. 10:5-12.1 vests exclusive jurisdiction over the claim

with the New Jersey Division on Civil Rights. We offer no opinion

on the issue.10

 Last, we reject plaintiff's contention that the court erred

by dismissing his claim of discrimination based on perceived

disability. The court did not dismiss a perceived disability

claim because plaintiff's complaint does not allege a cause of

action for discrimination based on a perceived disability.

 Affirmed in part, reversed in part. We do not retain

jurisdiction.

10
 It is also unnecessary to again consider plaintiff's argument
that the court erred by finding that he did not suffer an adverse
employment action. As noted, viewing the evidence in the light
most favorable to plaintiff, he demonstrated that he was
constructively discharged by being forced to retire. Plaintiff's
age discrimination claim fails because he did not to present any
evidence the constructive discharge was because of his age.

 26 A-2526-15T4